## ADDINGTON vs. SEXTON and others.

A complaint alleged that the plaintiff was, during a certain period, deputy sheriff of the county of R., duly appointed, &c., and resided at B. in said county, and that by an agreement entered into between the sheriff of said county and the plaintiff, for a valuable consideration, the plaintiff, as deputy sheriff, was to do all the business arising at B., and to receive as his own all fees and emoluments arising therefrom. *Held*, that this did not show that the office of deputy sheriff had been granted to the plaintiff "for a reward or gratuity paid or agreed to be paid" to the sheriff. Sec. 55, ch. 196, R. S.

An agreement between a sheriff and a person appointed by him as deputy, entered into at the time such appointment is made, that the appointee shall do all the business of the sheriff at a particular place, and receive as his own all the fees and emoluments therefor, is not within the prohibition of the statute.

Where a sheriff, at the request of the plaintiff in an attachment, had kept possession and taken care of the property attached for a considerable length of time, after which possession was surrendered to the attachment defendant: *Held*, that the sheriff was entitled to recover from the attachment plaintiff what his time and services were reasonably worth, under subd., 25, sec. 1, ch. 133, R. S.

APPEAL from the Circuit Court for *Milwaukee* County.

This was an action to recover for certain services rendered by the plaintiff as deputy sheriff, and also the amount of certain expenses incurred in performing his official duties. The

complaint alleges that on the 13th of April, 1861, one Taylor was sheriff of Racine county, and continued to be and act as such until January 4th, 1863; that during all that time the plaintiff was deputy sheriff of said county, duly appointed, &c., and resided at Burlington; that by an agreement entered into between said sheriff and the plaintiff for and upon a valuable consideration, the plaintiff, as such deputy, was to do all the business arising at Burlington, and to have and receive as his own all fees and emoluments arising from such business; and that the plaintiff was the full owner of, and the only party interested in, the claims set up in said complaint against the defendants. It further alleges, in substance, that on said 13th of April, 1861, in said town of Burlington, the plaintiff, as such deputy sheriff, served a summons and complaint for the defendants in an action in which they were plaintiffs and one Schadegg was defendant; that he also issued an attachment in said action by levying upon, seizing and holding a stock of goods, consisting of such articles as are usually kept for sale in a large country store, and amounting to about $3,500, then in the possession of and belonging to said Schadegg in said town of Burlington; that as soon as possible thereafter he made an inventory of the goods, and caused them to be appraised, as required by law; that after the service of the summons and complaint, and of the attachment papers, the defendants herein directed the plaintiff to hold possession of said goods, to keep the same in the building in which they were when so seized, and to take charge of the same and keep them safely by day and night; that the plaintiff accordingly did so, sleeping in said building at night, and watching and taking personal care of the goods by day and night from the said 13th of April, 1861, to the 29th of July, 1862, when possession of the goods was surrendered to the attachment defendant; and that he did this at the special instance and request of the defendants herein, under the promise that he should receive a reasonable compensation for said services. The

complaint then states the amount of the plaintiff's legal fees for serving the summons and complaint and executing the writ of attachment in said action, and the expenses actually incurred in taking possession of the goods, and that his services in keeping posseesion and taking care of the same were reasonably worth $407 ; and the aggregate of these items, less $150 already paid by the defendants on account thereof, he claims to be justly due from them. There was a second cause of action for the amount of rent paid by the plaintiff for the use of the building in which said goods were kept by direction of the defendants.—A demurrer to the complaint, as not stating facts sufficient to constitute a cause of action, was sustained, and the plaintiff appealed.

*Bennett & McClellan*, for appellant, contended that the language of the complaint did not show that the plaintiff's appointment as deputy sheriff was made in consideration of any reward or gratuity, or that any consideration whatever was paid by the plaintiff or received by the sheriff for such appointment. The allegation of the appointment of the plaintiff *precedes* that of the agreement between him and the sheriff. The latter must be construed as showing an understanding entered into between the sheriff and the deputy *after* the appointment. But apart from this, the allegation imports no more than that the sheriff *hired* the plaintiff to assist him as deputy. " The presumption of law is in favor of the legality of a contract, and therefore if it be reasonably susceptible of two meanings, one legal and the other not, that interpretation shall be put upon it which will support and give it operation." Chitty on Contracts, 571, 572, and cases cited. " When an expression is capable of different meanings, that shall be taken which will support the declaration, &c., and not the other, which would defeat it." 1 Chitty's Pl., 237, and cases there cited. Our new system of pleading is still more liberal. R. S., chap. 125, sec. 21. 2. If the plaintiff claimed the whole amount for which he sues, as having accrued to him by virtue

of his official character, we think that the words "legal fees and necessary expenses" (subd. 25, sec. 1, ch. 133, R. S.) would cover all the charges contained in the complaint. 3. The defendants became liable by reason of their personal obligation given to the plaintiff, and upon which he had a right to rely.

*Butler & Cottrill*, for respondents, contended that it appeared from the complaint that *for a valuable consideration paid*, the sheriff granted to the plaintiff the office of sheriff as to the town of Burlington, authorizing him to do all the business that arose there, and to have for his own all the fees and emoluments thereof; that the arrangement was void, as against public policy, at the common law (Bacon's Abr., Title "Office and Officers, F;" Noy, 102; Moor, 71; *Greville v. Attkins*, 9 B. & C., 462; *Godolphin v. Tudor*, 2 Salk., 468; *Love v. Buckner*, 4 Bibb, 506; *Davis v. Hull*, 1 Littell, 10; *Lewis v. Knox*, 2 Bibb, 453; *Outon v. Rodes*, 3 A. K. Marsh., 432); and that it was in conflict with secs. 55, 56, 57, ch. 169, R. S., which are identical with the present statutes of New York on the subject. Banks & Bros.' 5th Ed. R. S. N. Y. vol. 3, p. 977, Title 6, secs. 37, 38, 39; *Mott v. Robbins*, 1 Hill, 21; *Gray v. Hook*, 4 Coms., 449. The plaintiff has no claim for the fees except by virtue of this arrangement. The statute, sec. 57, avoids the grant of the office and everything connected with it. *Ex turpi causa actio non oritur*. Broom's Leg. Max., 572. A party cannot recover when, upon his own showing, his title to the property in controversy was derived through a contract void as against public policy, and prohibited by statute. Again, in this state every action must be brought by the real party in interest. The fees here sued for belong primarily to the sheriff. The plaintiff attempts to show himself the real party in interest by setting up a contract which the law declares to be void. Nothing passed under it to the plaintiff, neither the right to the fees and emoluments, nor even to act as deputy at all. *Tappan v. Brown*, 9 Wend., 175. 2. As to the claim for

$407, counsel argued that the plaintiff was bound by law to keep the attached property in his possession, and the law provided his compensation in subd. 25, sec. 1, ch. 133, R. S. This is limited to "such necessary expenses incurred as shall be just and reasonable in the opinion of the court." An agreement to pay an officer for doing a duty imposed on him by law is void. *Lane vs. Sewall,* 1 Chitty, 175; *Dew vs. Parson,* id., 295; *Bilke vs. Havelock,* 3 Campb., 374; *Preston vs. Bacon,* 4 Conn., 471; *Shattuck vs. Woods,* 1 Pick., 175; *Bussier vs. Pray,* 7 Serg. & R., 447; *Bridge vs. Cage,* Cro. Jac., 103; *Stotesbury vs. Smith,* 2 Burr., 924; *Hatch vs. Mann,* 15 Wend., 44.

*By the Court,* COLE, J. The objection that there was an illegal and corrupt agreement to appoint the appellant deputy sheriff, is founded upon the following portion of the complaint; "The said plaintiff further shows that on the 13th day of April, 1861, Horatio T. Taylor was sheriff of the county of Racine in said state, duly elected, qualified and acting as such, and was and continued to be and act as such sheriff until the 4th day of January, 1863, and during all that time this plaintiff was deputy sheriff of and for said county, duly appointed qualified and acting as such by and under said sheriff, and residing at Burlington in said county; that by an agreement entered into by and between said sheriff and this plaintiff for and upon a valuable consideration, this plaintiff, as such deputy sheriff, was to do all the business arising at Burlington aforesaid, and to have and receive as his own all fees and emoluments arising from such business; and that this plaintiff is the full owner of and the only party interested in the claims hereinafter set up against the defendants." It is contended that this shows that the sheriff was paid a reward or valuable consideration for appointing the appellant deputy sheriff, and that therefore such appointment was null and void. But according to our understanding of the complaint, it does not disclose an agreement within the statute against buying and selling offices. It is not alleged that the sheriff appointed the appellant depu-

ty " for any reward or gratuity paid or agreed to be paid." As
we understand it, the parties agreed that the deputy should do
all the business of the sheriff arising at Burlington, and receive
as his own the fees and emoluments of such business. Was
this a corrupt agreement for buying and selling an office, with-
in the meaning of the law? We think not. The case of
*Mott vs. Robbins*, 1 Hill, 21, is unquestionably a sound exposi-
tion of the law upon this subject, and is precisely in point.
Justice BRONSON says: "When the principal, on appointing
a deputy, takes an agreement for the payment of a gross sum,
which is not to come out of the profits of the office, the con-
tract is void. But where he reserves a part of the fees of the
office, or a sum certain which is to come out of the profits, the
contract is good. And the reason why the principal may take
a stipulation for a part of the fees or profits, is because the
whole belongs to him; and, as has been said, 'it is only re-
serving a part of his own and giving away the rest to an-
other.' But in this case they all belong to the sheriff, and the
agreement to divide them is only a mode of settling the com-
pensation of the deputy for such services as he might render.
Such an agreement the parties were at liberty to make."

The obvious intent of the statute is, to prevent corruption
in office; and it refers to corrupt bargains and sales of offices,
and not to an arrangement like the one set up in the complaint,
which is evidently a mere method of settling the compensa-
tion of the deputy for services rendered. 3 Kent, 455. Our
statute requires the sheriff to appoint one or more deputies.
Chap. 13, secs. 98 and 100. There is no law regulating the
compensation of the deputy, and this circumstance distinguish-
es the case from that of *Tappan vs. Brown*, 9 Wend., 175. In
*Lewis vs. Knox*, 2 Bibb, 453; *Love vs. Buckner*, 4 id., 506;
*Outon vs. Rodes*, 3 A. K. Marshall, 433; and *Davis vs. Hull*, 1
Litt., 9, a gross sum of money was agreed to be given as a
consideration for the sale or deputation of an office, and on
this ground the contract was held to be void.

Another objection is, that the appellant seeks to recover not only the statutory fees for the service of the summons, complaint and attachment, but also on a *quantum meruit* for his services in taking care of the attached property. These, it is claimed, were official services, for which he is entitled to no extra compensation. Our statute provides that the sheriff shall be entitled to receive "all such neccessary expenses incurred in taking possession of any goods or chattels, and preserving the same, as shall be just and reasonable in the opinion of the court." Subd. 25, sec. 1, chap. 133. In the complaint the appellant claims to recover $407 for his personal services in keeping possession of the attached goods, and taking care of the same for a period of fifteen months or more. We have no doubt that our statute allows the sheriff compensation for such services. The property attached was a stock of dry goods, and if they required care and attention to prevent them from spoiling or depreciating in value, it was the duty of the officer to give them. Suppose the sheriff had hired a clerk to look after the goods, would he not have been entitled to receive a reasonable sum for such services as being necessary expenses incurred in preserving the property? Suppose the property attached had been a stock of cattle, a flock of sheep, or something of the kind, which required constant care and attention: would not the officer be entitled to receive compensation for forage, and employing servants to look after them? And if he would be entitled to receive pay for employing a man to look after and take care of the property, would he not be entitled to compensation if he performed the services in person? The provision of the statute was undoubtedly intended to apply to such a case, and to permit the officer who had incurred necessary expenses in taking care of and preserving attached property, either by bestowing his own care and attention upon it, or employing a person to do so, to receive such compensation as in the opinion of the court might be just and reasonable.

For these reasons, the order of the circuit court, sustaining the demurrer to the complaint, must be reversed, and the cause remanded for further proceedings according to law.