GERTZ, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant, and others, Receivers, Respondents.

*January 28—May 31, 1913.*

*Appeal: Successive appeals not permitted: Waiver of right: Review: Questions for jury: Costs: Street railways: Negligence: Injury to passenger in collision.*

1. The supreme court has inherent authority to regulate the use of its jurisdiction so as to prevent successive appeals from a judgment and to promote, so far as practicable, a speedy and final determination of all questions involved.

2. Thus, in an action for personal injuries against two defendants, where judgment went against one and in favor of the other and plaintiff appealed from the latter part of the judgment, but the losing defendant claimed that its rights should not be deter-

mined on that appeal and that it might, later, take an appeal on its own behalf, a reasonable time is given to such losing defendant to present its objections to the judgment, taking an appeal in due form if necessary, to be considered and determined with plaintiff's appeal.

3. It is made a rule for such cases, subject to such variation as the peculiar facts of each case may require, that if any party affected by a judgment or order, who shall have had due notice of an appeal and the proceedings thereon, does not appropriately challenge such judgment or order, this court will conclusively presume that he has elected to waive the right to do so and will so dispose of the appeal as to preclude any further application to this court in respect to such judgment or order, other than the ordinary motion for a rehearing. ·

4. The decision of the trial judge in respect to whether evidence presented a jury question—the ruling in this case having been made both in refusing to take the question from the jury and in refusing to change the verdict—should prevail on appeal unless it appears from the whole record, having regard for his superior advantages, to be clearly wrong.

5. In an action for personal injuries received in a collision between two electric cars, it appeared that it was the custom for the cars upon the line on which plaintiff was a passenger to give cars on the crossing line the right of way at the place of the collision; that the motorman in charge of plaintiff's car stopped within fifteen feet of the crossing track and then turned on the current and attempted to cross, but was struck after going about thirty feet by a car on the other track coming down grade at a speed of thirty feet a second, both cars being lighted and it being a bright moonlight night. The motorman testified that before starting the car after the stop he looked up the other track and that it was clear for a distance of 375 feet. *Held*, that such testimony was incredible and that the motorman was guilty of actionable negligence as a matter of law.

6. Where, in an action against two defendants, judgment went against one and in favor of the other and there were separate appeals by the plaintiff and by the losing defendant, but the latter devoted its efforts on the appeal toward establishing the joint negligence of its codefendant, it is *held* that upon a reversal of the judgment as to such codefendant only costs against the latter should be awarded to plaintiff, but no costs for or against the appealing defendant, except that it should pay the clerk's fees upon its appeal.

WINSLOW, C. J., and TIMLIN, J., concur in the result.

APPEALS from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed as against one defendant; reversed as to the others.*

Action to recover for a personal injury.

Plaintiff's claim was this: While a passenger on a northbound First avenue—city of Milwaukee—car of the Chicago & Milwaukee Electric Railroad Company, operated by defendant receivers, an east-bound car of the *Milwaukee Electric Railway & Light Company* on Washington street, where the tracks of the two companies cross each other, ran into the Chicago car; causing him serious injury. Both cars were running at an unreasonable rate of speed while attempting to make the crossing,—a speed exceeding that permitted by the ordinance of the city of Milwaukee, and the motormen did not exercise such care as the law requires to avoid colliding at the crossing.

Issues were joined as to all matters covered by the verdict. The evidence proved this pretty clearly: The car on which plaintiff was injured, was, at the time thereof, passing over the intersection of the tracks before mentioned. When it had covered about half the way, the car going east struck it about fifteen feet from the front end, and forced it clear off its track. It was about 12 o'clock on a bright July night. Both cars were lighted and plainly visible from any point in either street near the crossing, while they were several hundred feet away, and all the time therefrom to the point of collision. A person on the Chicago car, as it approached the crossing, could, plainly, have seen a car approaching from the west on Washington street when several blocks distant. A motorman thereon could, likewise, readily have seen a car located as the Chicago car was when the motorman thereon started to make the crossing. As the Chicago car approached the crossing, it stopped with the front end about fifteen feet from the track on which the car was coming from the west. That was in sight from the point of view of the motorman on

the north-bound car and it was approaching at a considerable rate of speed. When it was not over 100 feet or so from the pathway of the Chicago car, the latter's motorman put on power to cross the track. About as he got well under way, he saw the danger of a collision and tried to make the crossing before the Milwaukee car reached the intersection of the tracks. He saw, or might have seen, that the motorman on the Milwaukee car was coming as if he was entitled to the right of way. His car was approaching at the rate of thirty feet or more per second. When the Chicago car had moved about its length and was going about ten feet per second, the collision occurred. The time which elapsed between the starting of the Chicago car and the accident was about two and one-half seconds,—time enough for the east-bound car to cover eighty feet or so. There was a custom, known to both motormen, that in case of a car on each track approaching the intersection at about the same time, the one on the Chicago company's line would stop and allow the Milwaukee car to pass by. The motorman on the Chicago line said that when he first saw the Milwaukee car it was 150 to 175 feet away; that he tried to go as fast as he could but had proceeded but about fifteen or eighteen feet when the accident occurred.

The jury found, specially, this: The motorman on the Chicago car did not fail to exercise the highest degree of care at the time of the collision. The motorman on the other car did not operate it with ordinary care at such time. Such want of care was the proximate cause of the accident and of the injury to plaintiff. He was damaged to the extent of $3,000.

Judgment was rendered on the verdict in favor of the receivers, but against the *Milwaukee Company*. Such proceedings were thereafter taken that the questions discussed in the opinion were duly saved for review.

Plaintiff appealed from the judgment in favor of the Chicago Company, and the *Milwaukee Company* appealed from

the judgment in plaintiff's favor. The former's appeal was duly certified to this court and, in due time, brought on for hearing. Counsel for plaintiff then insisted that, if the Mil-waukee Company intended challenging the judgment, it should join in plaintiff's appeal or take such course as would enable the court to decide the whole matter and close the litigation, finally, by a single judgment. Counsel for the Milwaukee Company insisted that it was not concerned in plaintiff's appeal and could rightfully pursue an appeal in its own behalf without reference to the other. Plaintiff's appeal was submitted without such controversy being decided; but, before disposing, finally, of such appeal, such controversy was decided in the manner indicated in this opinion. The principle of the decision was applied to the particular case by ordering that the Milwaukee Company, within sixty days, proceed in such manner as its counsel might determine to submit for decision any objections it might have to the judgment. Pursuant to such order, the controversy as to the Milwaukee Company was, in due time, submitted.

For the plaintiff and appellant, Arthur Gertz, there was a brief by W. B. Rubin, and the cause was argued orally by Max Schoetz, Jr.

For the defendant and appellant, Milwaukee Electric Railway & Light Company, there were briefs by Van Dyke, Rosecrantz, Shaw & Van Dyke.

For the defendants and respondents, W. Irving Osborne, D. B. Hanna, and George G. Moore as receivers of the Chicago & Milwaukee Electric Railroad Company, there was a brief by Quarles, Spence & Quarles, attorneys, and C. S. Thompson, of counsel, and oral argument by Mr. Thompson.

The following opinion was filed March 11, 1913:

MARSHALL, J. The question of practice presented by appellant's insistence upon the objections to the judgment by either party to the action being considered and the whole mat-

ter closed by one judgment in this court, and the opposition thereto by the *Milwaukee Electric Railway & Light Company,* was a very important one.   It seemed plain that the practice contended for by such company would, if approved, render possible several successive appeals to this court from one judgment and very prejudicial delay.   To allow that would sanction an abuse of the jurisdiction here or confess an infirmity of judicial power to prevent it, which the founders of our system, nor the legislature in regulating it, did not contemplate.   From that viewpoint, it was considered that an exigency existed warranting the court, in the exercise of its extraordinary power of superintending control, in establishing a judicial rule on a logical basis,—one sounding, reasonably, in waiver, as regards any statutory right of the party affected by the regulation, which would effectually prevent this jurisdiction from being needlessly and prejudicially used.   The court dealt with the matter this way:

"To allow the practice proposed would result in an abuse of the court's jurisdiction, which cannot be tolerated.   It would render possible successive appeals from a judgment, vexatiously and unnecessarily delaying the final determination of litigation.   The court possesses inherent authority to regulate the use of its jurisdiction so as to prevent such hindrances.   To that end it will conclusively presume, in a case of this sort, that any party affected by the judgment or order who shall have had due notice of the proceedings and does not appropriately challenge such judgment or order, has elected to waive the right to do so and will so dispose of the appeal as to preclude any further application to this court in respect to such judgment other than by the ordinary motion for a rehearing.   In this particular case the matter submitted will be held to give the *Milwaukee Electric Railway & Light Company* reasonable time to enable it to properly present its objections to the judgment—taking an appeal in due form, if necessary, and having the same duly certified to this court, in which case such appeal will be placed on the calendar for hearing and disposition with the appeal al-

ready submitted. Sixty days from the entry of this order is allowed for that purpose."

That may be regarded as a rule to be observed hereafter, varied from time to time in the application of it, as the peculiar facts of each case may require,—at all times to the end that in each instance of the jurisdiction of this court being invoked in respect to any controversy, there shall be as speedy and full settlement of all interests involved as practicable, and the entire litigation closable in the action brought to a final determination. Such result with a minimum of public and private expenditure, should be the judicial policy, and there should be steady progress along that line to the highest standard attainable, leaving any infirmity which may remain to be attributable to the lawmaking power rather than to the court.

Were the servants of the receivers who were in control of the car on which plaintiff was riding when injured, guilty of actionable negligence as matter of law? Plaintiff holds the affirmative. On that his counsel faces the necessity of overcoming the judgment of the trial court twice made,— first in refusing to take the question from the jury; second in refusing to change the result so as to be in plaintiff's favor against both defendants. That difficulty, as has often been said, is great, and necessarily so. From the circuit judge's advantageous position, there is a presumption that his conclusion is right and that presumption cannot be overcome by a mere balancing of probabilities. The decision must appear not only to be wrong, but clearly so, or else prevail. What will satisfy that may vary according to circumstances. The weight of a trial judge's decision will so vary and individual conceptions as well. As said in *Meyst v. Frederickson,* 146 Wis. 85, 87, 130 N. W. 960, the rule itself is a just and very valuable one in the administration of justice and is in harmony with the spirit of the Code. But it is, necessarily, not

an arbitrary rule.   In some circumstances unrecordable characteristics of a trial may be much greater than in another; in some the truth may turn wholly on the credibility of witnesses; in others, partly on that and partly on evidentiary inferences, and in others wholly on such inferences from circumstances admitted or conclusively established, matters of common knowledge and unquestionable physical elements. Again, different persons in discussing the rule and applying it, though really meaning the same, differ in words selected to express it.   That cannot well be avoided.   With all efforts to be impersonal, it is impossible to lay individuality entirely aside and, probably, it is best that it should be so and each, within reasonable limitations, be free to illustrate and elucidate principles in his own way using due care not to create room for supposed conflicts in the principles themselves. One way of presenting a given matter may best appeal to some minds and a different way to others.   Indulgence in different ways sometimes leads to propriety of a clarifying discussion as in *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 140 N. W. 30.

Probably, as there said in effect, the nearest to an impersonal rule on the subject,—the language which best, in general, meets the judicial view,—is that the trial judge's decision in respect to whether evidence presented a jury question is due to prevail on appeal, unless it appears from the whole record, having regard for his superior advantages, to be clearly wrong.   To some, much clarity is added by the explanatory words "reasonable doubts being resolved in favor thereof," because the very thought of "clearly wrong" in such circumstances is pregnant with the idea that in case of fair doubt one should incline to maintain the stability of the trial decision,—that a trial judge should have that encouragement to exercise the greatest practicable care and that aid to appreciate the great responsibility resting upon him.   In the judgment of the writer, the exact significance of the rule is no better illustrated than by the language of the chief justice in

*Asserin v. Modern Brotherhood,* 147 Wis. 520, 523, 133 N. W. 579, to the effect that an issue of fact having been solved by a jury and their decision approved by the trial judge, it should prevail "unless there is no evidence to sustain" it, "or unless the great weight of the evidence is against" it, "and that weight of evidence is so reinforced by all reasonable probabilities and inferences that it becomes overwhelming." From my viewpoint, in this case, it is appropriate to again refer to the dignity to be accorded to a trial judge's decision to the end that it may not be thought that there is any disposition not to give due heed to it in the particular instance.

Here, it is significant that there is no material question about the evidentiary facts. True, there is some conflict in the statements of witnesses, but the real truth at the points of conflict appears by indisputable or conceded physical facts. In that situation a trial judge's superiority of opportunity for determining the ultimate element, is at the minimum.

These facts stand out like the noon-day sun in a cloudless sky: It was customary for a car on the Washington street line to be accorded the right of way, when it approached the First avenue line so near the time of approach thereto of a car on the latter that one would reasonably be required to slow up, or stop if need be, to afford opportunity for the other to pass by. The car on the Avenue line was drawing a trailer and the two had passengers aboard making quite a heavy train; requiring considerable time, comparatively, to make the crossing ahead of the single car on the Washington street line. The Avenue train came to a stop on a level track with the front end about fifteen feet from the Washington street track. The motorman could not resume motion and clear the crossing without delaying a car coming down the grade on the Washington street line, unless it was quite a distance away. His car could not move but a few feet without entering the zone of danger. At the instant he applied the power, the oncoming car was in plain sight, moving at considerable speed on a well known down grade, and was but a

few car lengths from the point of intersection. There can be
no fair doubt about that, since the Avenue train,˙ though
speeded up to seven miles per hour, for the purpose of clear-
ing the crossing ahead of the other car, moved but about a car
length before the mischief was done. Not over about two
and one-half seconds elapsed between the application of the
power and the collision. ˙

True, as counsel for the receivers contend, the motorman
on the Avenue train testified to looking west on the Washing-
ton street line the instant before he applied the power and
seeing a clear track for at least a block, or some 375 feet.
But is that credible? It was a bright July night. One could
see west on the Washington street track for several blocks.
Could the car on that line have been coming at a speed of
some twelve times that of the Avenue car an instant after the
power was applied and yet the former not strike the latter
hard enough to badly wreck both? The motorman saw the
coming car, as he said, about as he entered upon its track
when it was 150 to 175 feet away, and, yet, his car moved
but about fifteen feet more before the collision, notwithstand-
ing the vigorous efforts of the motorman on the coming car
to check his speed. Is that possible, especially, in view of
the result of the blow? Giving the motorman on the Avenue
car the benefit of every reasonable inference, considering the
distance covered from the time he applied the power until the
collision, the Washington street car could not have been more
than 100 feet or so from the point of intersection when the
start was made, and in plain sight, coming down the grade
with the evident purpose of making the crossing without stop-
ping, and at the instant he said he saw it, 150' or 175 feet
away, it was, in fact, but two or three car lengths and the col-
lision inevitable.

There can be but one of two conclusions to be reasonably
drawn from what has been said : either the motorman did not
look west on the Washington street track before he applied
the power, or did so and saw the coming car in dangerous

proximity and thought to speed up and take the chances of clearing the crossing in time to avoid a collision. We have his admission that his car moved but about fifteen feet after he saw the other car before the blow was struck. It seems too clear for any fair doubt that when he saw the latter, as he said, 150 or 175 feet off, it was not half that far and that it was in plain sight, coming down grade and so near as to suggest danger in attempting to cross in front of it, when he applied the power.

In view of that and the admitted custom to afford a car on the Milwaukee line the preference in making a crossing, in case of reasonable necessity for one to wait for the other, how can it be said that the man in charge of the Chicago car did not, as matter of law, fail to exercise the highest degree of care for the safety of passengers? It seems rather that he failed to exercise even ordinary care—that it is putting the matter as mildly as the evidence will warrant, when it is said that his conduct may be regarded as within the field of inadvertence.

It follows that the trial court should have held, at the first opportunity, that there was no question for the jury as to actionable negligence of those in charge of the Chicago & Milwaukee Electric Railroad Company car, and that, failing in that, it should have corrected the verdict and given judgment to such effect, in accordance with the motion therefor.

The argument for the *Milwaukee Electric Railway & Light Company* is devoted wholly to the subject of negligence of its codefendant, and with that we fully agree. That gives rise to a question as to costs.

The error in not holding the Chicago Company liable with the *Milwaukee Company* was remediable on plaintiff's appeal. The latter company could have united with the plaintiff on that question without the proceedings which led to its doing so. We do not understand that it really raises any other. No other is argued in the brief in its behalf. In any event, it seems the case, without error as to its negligent participa-

tion in the accident, was submitted to the jury and closed by the verdict. Had the court instructed the jury as requested, and that been followed by a finding against the Chicago Company, possibly, the *Milwaukee Company* might have been acquitted; but, in view of the circumstances which characterized the approach by the latter company's car to the vicinity of the crossing, it is most likely that the jury would have found such company culpably contributed with the Chicago Company to produce the accident.

As we understand the presentation made by counsel for the *Milwaukee Company,* no serious contention is made in its behalf, if any at all, contrary to the view above expressed; but, if it be otherwise, the further contention must be regarded as without efficient merit. It looks here as if the *Milwaukee Company,* in practical effect, joins with the plaintiff against the Chicago Company, though the former's appeal is, in form, adverse to the plaintiff.

Under the cost statute, sec. 2949, Stats., costs in this court go to the prevailing party, not, necessarily, to the prevailing person. Such party, within the meaning of the statute, has reference to prevailing interest. Those wholly united in interest in challenging a judgment, though by several appeals, constitute one party, and in case of success are entitled, ordinarily, to a single bill of costs. *Harrigan v. Gilchrist,* 121 Wis. 127, 449, 99 N. W. 909. In the outcome here, plaintiff will obtain all the relief it seeks and the *Milwaukee Company* will be likewise successful. Why then should plaintiff have judgment for costs against the one which supports it in securing the relief it seeks against the Chicago Company? If that be answered in favor of the *Milwaukee Company,* should it have judgment against the party adverse to it, that is, the Chicago Company, against which it did not, in form, take any appeal? On the whole, it seems that the result as to the *Milwaukee Company,* may logically be treated as a part

affirmance and part reversal, within the broad spirit, if not the letter, of the statute. The judgment must be affirmed as to that part which it, in form, challenges, but reversed on its real ground of complaint. That leaves the matter of costs wholly to the discretion of the court. It is considered best to exercise such discretion by not granting costs either for or against the *Milwaukee Company,* and requiring it to pay the clerk's fees in this court on its appeal.

*By the Court.*—The judgment in favor of the receivers is reversed, with costs against them in favor of plaintiff. The judgment against the *Milwaukee Electric Railway & Light Company* is affirmed without costs for or against it, except it will pay the fees of the clerk of this court on its appeal. The cause is ordered remanded with directions to grant a motion, when made by the plaintiff or the *Milwaukee Company,* for a re-entry of the judgment so as to be against the receivers as well as against such company.

The following opinion was filed March 20, 1913:

WINSLOW, C. J. (*concurring*). I concur in the result reached in this case. I add this note simply to say that in my judgment the rule quoted from the *Asserin Case* has no bearing on the question of the weight to be given to the decision of the trial judge on a motion for nonsuit or directed verdict. That question was not under consideration in the *Asserin Case,* but simply the question of the effect of the verdict of the jury. The familiar rule was laid down that the verdict will not be set aside unless there is no evidence in its support, or unless the great weight of evidence is against it, and that weight is so reinforced by all reasonable probabilities and inferences that it becomes overwhelming.

This rule has no bearing on the initial question, namely, the question whether *there is any evidence* to go to the jury.

488    SUPREME COURT OF WISCONSIN.    [MAY

That question must be decided by itself. It gets no help from the verdict, because the verdict cannot make evidence where there was none before.

TIMLIN, J.   I concur in the result only.

A motion for a rehearing was denied, with $25 costs, on May 31, 1913.