AMERICAN WRECKING COMPANY, Appellant, vs. Mc-MANUS, Respondent, and VOGEL REAL ESTATE COMPANY, Impleaded Defendant.

McMANUS, Appellant, vs. VOGEL REAL ESTATE COMPANY, Defendant.

*January 13—February 8, 1921.*
*May 7—May 31, 1921.*

*Sheriffs: Writs of restitution: Compensation to persons aiding in execution: Personal liability of sheriff: Waiver of prepayment of charges: Deputy as agent of sheriff: Liability of landlord for expenses of sheriff: Fees of sheriff in executing writ: Notice of appeal: On whom served: Time within which other appeals may be taken: Waiver: Enlargement of time by supreme court.*

*On first appeal:*

1. Since under sub. (24), (25), sec. 59.28, Stats. 1919, a sheriff is entitled to reimbursement for necessary expenses incurred in serving a writ or other process, he was liable for services

rendered by a wrecking company employed by his deputy to remove heavy machinery in the execution of a writ of restitution, since the sheriff, in serving the writ and incurring the expense, was not acting as agent for the public ·but as a principal in the performance of an official duty.

2. A sheriff who undertakes the service of a writ without demanding his fees and charges in advance waives their prepayment.

3. A deputy sheriff acts as the general agent for the sheriff while in the discharge of official duties and has authority to bind the sheriff in incurring expenses in the service of a writ.

*On second appeal:*

4. Under sec. 3049*a*, Stats., providing that if one of several parties bound by the same judgment appeals therefrom he shall serve his notice of appeal on all parties bound with him by the judgment, one appealing from a judgment must serve his notice of appeal upon all who are bound by the judgment, and those so served shall within thirty days thereafter take and perfect their own appeals or be deemed to have waived their right; the purpose of the statute being to require all appeals from the same judgment to be taken speedily so that all may be heard at the same time and disposed of by a single mandate.

5. Under said sec. 3049*a*, providing further that the supreme court may, at any time after an appeal is taken, bring in additional parties, one bound with an appellant by the same judgment may be brought in and allowed to perfect his appeal after the lapse of thirty days, the section being in the nature of a default rather than a statutory bar, and the courts having broad powers to relieve defaults. The rule that the court cannot authorize an appeal after the expiration of the statutory period is inapplicable.

6. A defendant who brings in a third party who will be liable over to defendant in case he is held liable to plaintiff should, upon an appeal by the plaintiff from the judgment in the original action, appeal from that portion of the judgment dismissing his cross-complaint, orderly practice requiring that the controversy raised by the cross-complaint be brought up on appeal so that this court may terminate the entire controversy.

7. Where a writ of restitution was issued upon a judgment in favor of a landlord, commanding the sheriff to cause the tenant to be immediately removed from the premises, and the execution of the writ involved the removal of heavy machinery and other property that could be moved only by tackle and other suitable apparatus, and the sheriff employed a

wrecking company which did the work at considerable expense, the sheriff could recover the amount of his disbursements from the landlord, who, though he knew the character of the property and that assistance would be necessary to execute the writ, did not inform the sheriff that the ordinary execution of the writ was not desired.

8. Since sec. 59.28, Stats., provides that "Every sheriff shall be entitled to receive the following fees for his services, except for services in actions or proceedings before justices of the peace, for which fees are specially provided by law," a sheriff in serving writs issued out of justices' courts is confined to the fees prescribed for constables; but where such fees are not provided he is entitled to charge the fees prescribed in sec. 59.28, including reimbursement for all necessary expenses incurred in the execution of the writ of restitution, as provided by sub. (24) and (25).

9. Under sec. 3779, Stats., providing that no disbursements to officers or others shall be allowed unless the items are particularly specified and proved and were necessary and reasonable in the opinion of the justice, a constable is entitled to the same charge for disbursements in executing the writ of restitution as the sheriff under sub. (24) and (25), sec. 59.28, there being no provision in the schedule of fees to reimburse constables.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed, with directions.*

On the 6th day of April, 1918, a writ of restitution was issued out of the civil court of Milwaukee county upon a judgment therein rendered in favor of the *Vogel Real Estate Company* and against the Builders' Mortar & Supply Company, commanding the sheriff of Milwaukee county, taking with him the force of the county if necessary, to cause the said Builders' Mortar & Supply Company to be immediately removed from the premises therein described, and that the plaintiff have peaceable restitution of the same.

The defendant *Patrick McManus* was sheriff of Milwaukee county and had under him forty deputies and numerous office employees, including a bookkeeper. In accordance with a custom established by the sheriff, writs

and papers to be served were delivered to the bookkeeper, who assigned them to the respective deputies for service. The writ of restitution in question was delivered to the bookkeeper, who placed it in the hands of Deputy Sheriff Sloane for service. The deputy duly served the paper on the Builders' Mortar & Supply Company, and discovered that the execution of the writ involved the removal of heavy machinery, iron beams, and other personal property that could be moved only by tackle and proper apparatus and appliances for moving heavy personal property of that character. The plaintiff was employed by the deputy sheriff to remove this property, and was necessarily engaged in doing the work from the 16th day of April, 1918, to and including the 30th day of April, 1918. Its bill for said services amounted to $1,327.55. Thereafter, and on or about the 11th day of May, 1918, the said sheriff filed a petition in the unlawful detainer action in the civil court, setting forth that the execution of the writ involved the removal of heavy articles of personal property; that the *American Wrecking Company* was employed therefor; that the reasonable value of its services in such behalf was $1,327.55, and prayed that such sum be fixed and allowed by the court as a necessary, reasonable, and legal disbursement and fee of said sheriff in the execution of said writ. By order dated June 6, 1918, the civil court allowed and taxed the said sum as costs and ordered the writ of restitution to be amended by adding such sum thereto as taxable costs which the said sheriff should make out of the goods and chattels of said defendant.

This action was brought by the plaintiff in the civil court of Milwaukee county to recover said sum of $1,327.55. Upon motion of respondent the *Vogel Real Estate Company* was interpleaded. The defendant *McManus* filed an answer and cross-complaint in which he denied liability to the plaintiff, but insisted that if he be held liable he recover of

and from the *Vogel Real Estate Company* the amount of any judgment recovered against him.

The civil court held that the sheriff was not liable to the plaintiff and entered judgment dismissing plaintiff's complaint as well as the cross-complaint against the *Vogel Real Estate Company*. The plaintiff appealed from that part of the judgment dismissing its complaint, and the defendant *McManus* appealed from that part of the judgment dismissing his cross-complaint against the *Vogel Real Estate Company*, to the circuit court for Milwaukee county, where the judgment of the civil court was affirmed. The plaintiff brought this appeal from that part of the judgment of the circuit court which affirmed the judgment of the civil court dismissing its complaint.

The cause was submitted for the appellant on the brief of *Curtis & Mock* of Milwaukee, and for the respondent on that of *Winfred C. Zabel, William L. Tibbs,* and *Daniel W. Sullivan,* all of Milwaukee.

A brief was also filed by *Lines, Spooner & Quarles* and *John W. McMillan,* all of Milwaukee, as *amici curiæ.*

The following opinion was filed February 8, 1921:

OWEN, J. In support of the judgment appealed from respondent first relies upon the principle of law that a public officer acting within the scope of his authority and within his official capacity is not personally liable on contracts executed in behalf of the government unless he expressly and unequivocally agrees to be bound, and cites to this proposition, among other authorities, the case of *McCurdy v. Rogers,* 21 Wis. 197, where the following language is used:

"The law raises a very strong presumption against any credit being given to a public agent acting within the scope of his authority, and requires a clear intention on his part to charge himself, to make him personally liable. This presumption of the law is equivalent to an implied agreement

that he shall not be liable while acting within his authority. If he acts in a case where he has no authority, and fully discloses to the party with whom he is acting his want of authority, or the want of authority is known to such party, and he does not exact the individual undertaking of the agent, we see not why the same presumption should not then be raised against the liability of the agent, as when he was acting within the scope of his authority."

It is said that by virtue of this principle neither the sheriff nor the deputy would be liable under the contract of employment of plaintiff in the absence of an express agreement on their part to assume personal liability, and that from the mere fact of employment such liability does not arise by implication. We have no disposition to question the rule under consideration, but we do question its applicability to the situation under consideration. The rule is applicable to the relation of principal and agent and applies where the agent (the officer) attempts to bind his principal (the public) by contract upon a subject concerning which he has some semblance of authority to contract, but where, in entering into the contract, he exceeds the scope of his authority and fails to bind his principal, the public. Under such circumstances it is held that an intention on the part of either of the contracting parties to create a liability on the part of the agent, the officer, will not be implied.

Where a sheriff in the service of a writ finds it necessary to secure assistance to execute the commands of the writ, such as the seizure or removal of property, or its safe-keeping after the same has been taken into his custody, he is not acting as agent for the public. There is no provision of law which gives him the least semblance of authority to bind the public in such respect. If such services are employed for his convenience, or to enable him to properly discharge his official duties so as to save him from official responsibility, it is his individual matter, and in entering into such agreements he is acting as principal and not as

agent for the public. It is an official duty which he is called upon to render and for the discharge of which the statute makes provision for his compensation or reimbursement. In sec. 59.28, Stats., which prescribes the schedule of fees for the sheriff, we find these provisions:

"(24) For serving any writ or other process with the aid of the county, two dollars and fifty cents *and all necessary expenses* incurred thereby.

"(25) All such necessary expenses incurred in taking possession of any goods or chattels and preserving the same as shall be just and reasonable in the opinion of the court."

These provisions of the statute provide for the sheriff's reimbursement for expenses such as were incurred in the instant case, and the person for whom the writ was served is responsible to the sheriff therefor. No other person has any interest in such disbursements, and there can be no pretense that in entering into such agreements of employment as the one consummated between the deputy sheriff and the *Wrecking Company* either the sheriff or the deputy is acting on behalf of the public. The sheriff, under such circumstances, acts as principal and not as agent for the public, and he is liable upon an implied promise to compensate him who is employed to assist him in the discharge of his official duty. A like conclusion was reached by the Iowa court under a statute containing provisions similar to those above quoted. *Rowley v. Painter,* 69 Iowa, 432, 29 N. W. 401.

The fact that the sheriff is compensated by the county upon a salary basis rather than under a fee system does not affect our conclusions. His official responsibility and powers are the same. It should also be said that he has it within his power to protect himself against personal responsibility under such circumstances, as it is his privilège to demand his legal fees and charges in advance. *Carlisle v. Estate of Soule,* 44 Vt. 265; *Jones v. Gupton,* 65 N. C. 48; *Adams v.*

*Dinkgrave,* 26 La. Ann. 626; *Atkinson v. Hulse,* 30 Ark. 760; *Alexander v. State,* 42 Ark. 41. Where, however, he undertakes the service of the writ without demanding his fees in advance he waives their prepayment. *Carlisle v. Estate of Soule, supra.*

It is further contended by the respondent that even though the sheriff be held personally responsible upon such agreements when made by himself, nevertheless a deputy sheriff has no power or general authority to bind the sheriff in such respect, and this has been held by a number of courts. *Dooley v. Root,* 13 Gray, 303; *Dow v. Rowe,* 58 N. H. 125; *Lucier v. Pierce,* 60 N. H. 13; *Kendrick v. Smith,* 31 Me. 162; *Miller v. Bruff,* 64 Pa. Super. Ct. 177; *Krum v. King,* 12 Cal. 412. The first case in which it was so held seems to be *Dooley v. Root, supra.* The entire report of that case covers less than a page, and the conclusion there reached rests upon the following observations:

"But there is nothing in the relation of a sheriff to his deputy which can make the sheriff answerable upon the contracts of his subordinate officer. It is no part of the official duty of a deputy sheriff to make contracts with other persons to assist him in the discharge of his official duties. If he makes such contracts he makes them for his own convenience and on his own responsibility."

It will thus be seen that in that case the fundamental relations existing between the sheriff and his deputy received but passing consideration.

In *Kendrick v. Smith,* 31 Me. 162, the subject received more extended consideration, but we are not impressed with the logic upon which the court rested its conclusion, the gist of which is revealed by the following sentence:

"The deputy obtains the aid, which has been referred to, that neither he nor his principal should be liable for any claim for misconduct or negligence, and it could not have been intended by the authors of the statute that the sheriff should be liable on the one hand for the omission of official

duty in his servant, and for the means used by the latter to secure him for this liability on the other."

The statutes of that state contained a provision similar to our present sec. 59.22, making the sheriff responsible for the default or misconduct in office of his deputy. It is generally held that the liability created by this section and by similar statutory provisions relates only to the tortious acts of the deputy. The Maine court argued that because the statute created this liability for the tortious acts of the deputy it could not be thought that the legislature intended to make the sheriff liable upon the contracts of the deputy entered into by him for the purpose of protecting the sheriff from tortious liability. This does not seem sound. If the sheriff is liable for the tortious acts of his deputy, why should he not be liable for contracts made by the deputy to enable the deputy to properly perform his duties and thus save the sheriff from tortious liability? By universal authority the deputy sheriff in making service of process is acting in the place of the sheriff. When the sheriff intrusts him with the service of a writ he constitutes him his agent to serve the writ and to do all things necessary to properly discharge the official duty devolving upon the sheriff by reason of the undertaking, and save him from responsibility for nonfeasance or malfeasance in its execution.

In *Ramsey v. Strobach*, 52 Ala. 513, the court, speaking of this subject, said:

"By sec. 817 of the Revised Code a sheriff is required to 'have one deputy, and may have as many as he thinks proper.' A full deputy sheriff, as Boothe was, according to the evidence in this cause, must in this state be considered a general agent for his principal. As such he must be presumed, when he seizes goods upon an attachment or execution, to have authority to provide for the safe-keeping of them, by committing them to a bailee; and to engage such bailee, if the goods be live-stock, to give them food, water, and proper care. A citizen may undertake such service upon

an engagement or at the request of a deputy sheriff, and will be entitled to compensation for the performance of it, upon the presumption that the deputy has authority from his principal to make such an arrangement for the custody and preservation of the property seized. Such a transaction comes within the scope of a sheriff's duty, and may be entered into by his deputy as his general agent."

Similar logic led to a like conclusion in *Foster v. Rhinehart,* 11 N. Y. Supp. 629.

In this conflict of authority, we prefer to be guided by what appeals to us as the greater force of reason rather than what may be called the weight of authority, and hold that a deputy sheriff acts as the general agent for his principal, the sheriff, while in the discharge of official duties, and that individuals called upon to render assistance necessary to the proper discharge thereof may contract with the deputy upon the assumption that he has full power and authority to represent his principal. It follows that in the instant case the sheriff was bound by the engagement of the deputy, and that judgment should have been rendered in favor of the plaintiff for the reasonable value of the services rendered.

The *Wrecking Company* fixed the value of its services at the sum of $1,327.55. That such was the reasonable value of the services does not seem to be disputed. At any rate, the sheriff so averred in his application to have that amount allowed as costs in the original action. As there is no dispute concerning the value of the services, the case should be remanded with instructions to enter judgment in favor of the plaintiff and against the defendant *McManus* for the sum of $1,327.55.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in favor of the plaintiff in the sum of $1,327.55.

On March 8, 1921, respondent *McManus* moved to have the *Vogel Real Estate Company* made a party to the action,

or in case of a denial thereof that the mandate be modified so as to direct further proceedings in the trial court.

The motion was argued by *W. L. Tibbs* and *Daniel W. Sullivan* for the respondent, by *John W. McMillan* for the *Vogel Real Estate Company,* and by *H. K. Curtis* for the appellant.

The following opinion was filed March 28, 1921:

PER CURIAM.    The defendant *McManus* now moves the court to have the impleaded defendant, the *Vogel Real Estate Company,* made a party to the appeal in this action so as to enable this court to make a determination of the rights and liabilities of all the parties to the action and direct that a judgment be entered accordingly.    We are persuaded that the right of appeal by the defendant *McManus* from that part of the judgment determining that the defendant *Vogel Real Estate Company* is not liable to *McManus* has not been waived by his omission to perfect an appeal within thirty days after the date on which plaintiff appealed.    The following clause of sec. 3049*a*, Stats., does not apply to him under the steps taken by plaintiff in appealing this case:

"In case one of a number of parties jointly or severally bound by the same judgment appeals therefrom, he shall serve his notice of appeal on all parties who are bound with him by the judgment, and said parties shall thereupon within thirty days after such service, unless the time be extended by the trial court for cause shown, take and perfect their own appeals or be deemed to have waived their right to appeal."

The notice of appeal by the plaintiff, *American Wrecking Company,* was served on *McManus* and the *Vogel Real Estate Company.*    The terms of this clause of the statute apply where "one of a number of parties jointly or severally bound by the same judgment appeals therefrom."    This clause of the statute was evidently intended to include only parties who are "jointly and severally bound" by the judg-

ment appealed from who stand opposed to the party in whose favor the judgment has been awarded. If one of the parties "jointly or severally bound" thereby appeals and if the other parties who are "jointly and severally bound" with him are served with notice of appeal by one of them, then they must perfect their appeal as required by the statute or be deemed to have waived it. The object of this procedure is manifestly to do away with successive appeals from a judgment by different parties "jointly and severally bound" by it. Such successive appeals would permit of a practice which would lead to an abuse of this court's jurisdiction. This should be avoided. As above shown, the statute, however, does not apply to the defendants in this case because the judgment of the trial court was in their favor and the case is brought to this court for review by the party opposed to them, namely, the plaintiff, which under the terms of the statute was *the party bound by the judgment*. Upon this motion, therefore, we have this situation: The plaintiff, the party bound by the judgment of the trial court, appealed from that part of the judgment dismissing its complaint demanding recovery against the defendant *McManus*. This left the part of the judgment dismissing the counterclaim of *McManus* against the codefendant, the *Vogel Real Estate Company*, unappealed from. On plaintiff's appeal this court determined that plaintiff had a good cause of action against the defendant *McManus*, and reversed the part of the judgment appealed from. The defendant *McManus* now asks that the defendant *Vogel Real Estate Company* be made a party to the appeal to the end that a final determination of the rights and liabilities between it and the defendant *McManus* may be determined in the light of the fact that *McManus* is held liable to the plaintiff and that judgment may be awarded determining the rights and liabilities between the defendants. We think it an appropriate case to exert this court's extraordinary

power of superintending control to regulate its jurisdiction in this case so as to promote a speedy and final determination of the rights and liabilities of and between the defendants to the action. *Gertz v. Milwaukee E. R. & L. Co.* 153 Wis. 475, 140 N. W. 312.

It is therefore ordered that the judgment heretofore entered in this action be vacated and the defendant *McManus* given twenty days to take an appeal in due form from that part of the judgment not heretofore appealed from by the plaintiff, and to have the same duly certified to this court; and that such appeal be placed on the calendar for hearing at the May 3, 1921, assignment of causes for argument. The defendant *Patrick McManus* to pay the *Vogel Real Estate Company* $25 costs of this motion.

The following opinion was filed May 31, 1921:

Owen, J. As indicated in the statement of facts in this case, this action was brought in the civil court of Milwaukee county by the plaintiff against *McManus,* the sheriff. *McManus* impleaded the *Vogel Real Estate Company* and filed a cross-complaint against it, alleging liability on the part of that company in the event that he be held liable to the plaintiff in the original action. This, presumably, was done pursuant to the provisions of sec. 2610, Stats., which provides:

"A defendant who shows by affidavit that if he be held liable in the action he will have a right of action against a third person not a party to the action for the amount of the recovery against him, may, upon due notice to such person and to the opposing party, apply to the court for an order making such third person a party defendant in order that the rights of all parties may be finally settled in one action, and the court may in its discretion make such order."

The plaintiff appealed from the judgment rendered against it by the civil court to the circuit court, and *McManus*

also appealed from that part of the judgment denying him relief against the impleaded defendant *Vogel Real Estate Company*. The judgment was affirmed in the circuit court, and the plaintiff again appealed, but the defendant *McManus* failed to appeal from that part of the judgment in favor of the *Vogel Real Estate Company*. The mandate of this court reversed the judgment upon the appeal of the plaintiff and remanded the cause with directions to enter judgment in favor of the plaintiff and against *McManus*. The latter thereupon filed a motion asking that the *Vogel Real Estate Company* be made a party, so that a final determination might be made of all the issues actually litigated or determined in the action, or, if said motion be denied, that the mandate of this court be changed or amended so as to direct such further proceedings in the court below as will enable it to finally determine and dispose of all the issues actually litigated in the action, and to enable said *McManus* to have judgment against the *Vogel Real Estate Company* in the amount of the liability adjudged against him in this action. This was followed by a motion for rehearing made by *McManus* in addition to the motion that the mandate of this court be changed in the event that a rehearing be denied. In response to these motions this court entered the following order:

"It is hereby ordered that the judgment heretofore entered in this action be vacated, and the defendant *McManus* be given twenty days to take an appeal in due form from that part of the judgment not heretofore appealed from by the plaintiff, and to have the same duly certified to this court; that such appeal be placed on the calendar for hearing on the May 3, 1921, assignment of cases for argument. Defendant *Patrick McManus* to pay the *Vogel Real Estate Company* $25 costs of this motion."

Thereupon *McManus* appealed from that part of the judgment adjudging that his cross-complaint against the *Vogel Real Estate Company* be dismissed. When the case

was reached for argument the *Vogel Real Estate Company* moved to dismiss the appeal on the following grounds: (1) That the defendant *Patrick McManus* waived his right to appeal and this court is without jurisdiction or authority to extend the time within which the defendant *McManus* may appeal from said judgment pursuant to Wisconsin Statutes, sec. 3049*a;* (2) because such appeal is not taken in conformity with the Wisconsin Statutes in such cases made and provided; and (3) because and for the reason that the findings and judgment of dismissal in the civil and in the circuit court are not appealable, as the cause of action embodied in the cross-complaint was prematurely brought.

The question with which we are immediately confronted, therefore, arises on the motion of the *Vogel Real Estate Company* to dismiss the appeal. It is insisted that *McManus* was required to take his appeal within thirty days after service of plaintiff's notice of appeal upon him, by virtue of the following provisions of sec. 3049*a,* Stats.:

"In case one of a number of parties jointly or severally bound by the same judgment appeals therefrom, he shall serve his notice of appeal on all parties who are bound with him by the judgment, and said parties shall thereupon within thirty days after such service, unless the time be extended by the trial court for cause shown, take and perfect their own appeals or be deemed to have waived their right to appeal."

Discussing this provision, it was said in the *per curiam* opinion accompanying the order permitting *McManus* to appeal that the phrase "one of a number of parties jointly or severally bound by the same judgment" was evidently intended to include only parties who are "jointly and severally bound by the judgment appealed from who stand opposed to the party in whose favor the judgment has been awarded." We think this is the natural import of the language of that section above quoted, but further consideration of the provisions of this statute, together with the pronouncements

of this court which evidently led to its adoption, constrains us to believe that the construction placed upon that section in the *per curiam* opinion is too narrow and, as so construed, it does not accomplish the legislative purpose.

At the January term for the year 1913 this court had before it the case of *Gertz v. Milwaukee E. R. & L. Co.* 153 Wis. 475, 140 N. W. 312. In that case plaintiff brought action against the Chicago & Milwaukee Electric Railroad Company and the Milwaukee Electric Railway & Light Company to recover damages for personal injuries. Judgment was rendered in his favor against the Milwaukee Company, but in favor of the Chicago Company and against the plaintiff. Plaintiff appealed from the judgment in favor of the Chicago Company. Plaintiff's appeal was brought on for hearing, at which time it appeared that the Milwaukee Company intended to appeal from the judgment rendered against it in the same action. The plaintiff insisted that if the Milwaukee Company intended to challenge the judgment it should join in plaintiff's appeal or take such course as would enable the court to decide the whole matter and close the litigation by a single judgment. It was the contention of the Milwaukee Company that it was not concerned with plaintiff's appeal from the judgment rendered in favor of the Chicago Company, and that it could appeal at any time within the period fixed by statute for the taking of an appeal. Concerning this the court said:

"To allow the practice proposed would result in an abuse of the court's jurisdiction, which cannot be tolerated. It would render possible successive appeals from a judgment, vexatiously and unnecessarily delaying the final determination of litigation. The court possesses inherent authority to regulate the use of its jurisdiction so as to prevent such hindrances. To that end it will conclusively presume, in a case of this sort, that any party affected by the judgment or order who shall have had due notice of the proceedings and does not appropriately challenge such judgment or order, has elected to waive the right to do so and will so dispose of

the appeal as to preclude any further application to this court in respect to such judgment other than by the ordinary motion for a rehearing. In this particular case the matter submitted will be held to give the Milwaukee Electric Railway & Light Company reasonable time to enable it to properly present its objections to the judgment—taking an appeal in due form, if necessary, and having the same duly certified to this court, in which case such appeal will be placed on the calendar for hearing and disposition with the appeal already submitted. Sixty days from the entry of this order is allowed for that purpose."

There can be no doubt that sec. 3049a is a legislative embodiment of the rule there announced, and that the section was enacted for the purpose of establishing a legislative rule which would prevent "successive appeals from a judgment, vexatiously and unnecessarily delaying the final determination of litigation." As construed in the *per curiam* opinion, the statute would not reach the situation before the court in *Gertz v. Milwaukee E. R. & L. Co., supra,* and we are now convinced that the statute was enacted for the purpose of reaching not only the situation there presented, but for the purpose of requiring all appeals from the same judgment to be taken speedily, to the end that all complaints against the judgment may be heard at one and the same time in this court, and disposed of by a single mandate. We therefore construe sec. 3049a as requiring any person appealing from a judgment to serve his notice of appeal upon all who are bound by the judgment, and those so served must perfect their appeal within thirty days or be deemed to have waived it. This is the only construction that can be placed upon the section that will accomplish the evident legislative purpose, or prevent the evil arising from successive appeals deplored in the *Gertz Case.*

But it does not follow that the appeal should be dismissed. It will be noticed that by the provisions of sec. 3049a those who do not perfect an appeal within the time therein

provided shall be deemed "to have waived their right to appeal." The very next sentence of that section provides:

"The supreme court may by order at any time after an appeal is taken bring in additional parties upon their own application or upon application of one of the original parties to the appeal, and in such case the party or parties so brought in shall be given an opportunity to be heard before final judgment is pronounced in said court."

This is appropriate language to reserve to the court its jurisdictional power asserted in the *Gertz Case*. The order entered in the *Gertz Case* provided, in effect, that although the Milwaukee Company had one year in which to perfect its appeal, yet, unless it exercised that right within sixty days from the entry of the order, it would be deemed to have waived the same, under the circumstances of that case. While sec. 3039 grants to an aggrieved party one year in which to appeal from a judgment, under the provisions of sec. 3049*a* it is deemed to have waived that right unless the appeal is hastened under the circumstances therein mentioned. The situation arising under the provisions of sec. 3049*a*, therefore, is rather in the nature of a default than a statutory bar. While it is established in this court that the right of appeal is a statutory right, and a court has no power to authorize the taking of an appeal after the time fixed by statute therefor has expired (*Filer & Stowell Co. v. C., M. & St. P. R. Co.* 161 Wis. 591, 155 N. W. 118), courts have broad powers to relieve defaults. Whether such power is inherent or rests in statutory enactment we need not here inquire. The provision of sec. 3049*a* empowering the court to bring in additional parties authorized the order entered herein permitting *McManus* to take his appeal. We think the entry of the order was abundantly justified under the circumstances of the case. Certainly it will greatly expedite the final determination of the controversy, and the failure of *McManus* to take his appeal was not entirely unreason-

able, as the judgment entered in the circuit court was in his favor.

It seems proper. to suggest, however, that where a defendant secures an order bringing in a third party who, he claims, will be liable over to him in case he is held liable in the original action, upon an appeal from a judgment in his favor he should also appeal from that portion of the judgment dismissing his cross-complaint. If the object of the practice of bringing in a third party under such circumstances is to be accomplished, manifestly both controversies should be kept together, and when the main controversy is brought by appeal to this court, orderly practice requires that the controversy raised by the cross-complaint against the impleaded party should also be brought up on appeal, so that this court may by its mandate terminate the entire controversy.

The other grounds upon which the motion to dismiss is based are not of sufficient merit to require discussion. The motion is denied.

Upon the merits, *McManus* is entitled to judgment against the *Vogel Real Estate Company* for the amount of his disbursements as fixed by the court. One who delivers a writ to a sheriff for service and execution is liable to the sheriff for the amount of his lawful fees and charges therefor. *Addington v. Sexton,* 17 Wis. 327. A proper execution of a writ of restitution requires the sheriff to remove all personal property belonging to the tenant from the premises. 19 Cyc. 1175; 24 Cyc. 1452. See, also, *Gaertner v. Bues,* 109 Wis. 165, 85 N. W. 388. It is argued that the sheriff should not have incurred such a large bill of expense without some further authorization from the *Vogel Real Estate Company.* We fail to appreciate the force of this contention. The *Vogel Real Estate Company* caused the writ to be delivered to the sheriff. This not only authorized but commanded the sheriff to remove all personal property from

the premises.   The *Vogel Company* knew the character of the property which it was necessary to remove and that assistance would be necessary to execute the writ.   If the ordinary execution of the writ was not desired, the *Vogel Company* should have so informed the sheriff.   In the absence of such intimation from the *Vogel Company,* a proper discharge of his legal duties required the sheriff to remove the property.

The only further question in the case is whether the statute provides for the reimbursement of the sheriff for expenses incurred in the removal of the property.   The *Vogel Company* contends that the statute makes no such provision therefor.   It is said that the writ of restitution was issued by the civil court of Milwaukee county pursuant to its jurisdiction of justice of the peace.   This is correct.   It is also said that the constable is the ministerial officer of the justice of the peace, and that there is no provision in the schedule of constable's fees for reimbursement for expenses incurred in the execution of a writ of restitution.   This also seems to be correct.   Sec. 59.28, Stats., however, provides that "every sheriff shall be entitled to receive the following fees for his services, except for services in actions or proceedings before justices of the peace, for which fees are specially provided by law."   In serving writs issued out of justices' courts the sheriff is confined to the fees prescribed for constables where such fees are provided.   Where such fees are not provided, however, he is entitled to charge the fees prescribed in sec. 59.28, sub. (24) and (25) of which (quoted in the main opinion) provide for his reimbursement for all necessary expenses incurred in the execution of a writ such as this.   *Cutts v. Rock Co.* 58 Wis. 641, 17 N. W. 636.   And by virtue of the provisions of sec. 2959 a constable would be entitled to a similar charge for his disbursements in executing a writ of restitution.   While the schedule of constable's fees contains no express provision for disbursements

incurred in the service of any writ except for those made for board and conveyance of persons, which is to be settled by the county board, nevertheless, sec. 3779, relating to costs and fees in courts of justices of the peace, provides that

"No disbursements to officers or others shall be allowed unless the items are particularly specified and proved to the justice and the same were in his opinion necessary and reasonable in amount; and the justice may hear any evidence which may be offered to prove any charge is unreasonable or that the service has not been rendered."

This is a clear recognition that constables are entitled to their disbursements under some circumstances, and as there is no express provision in the schedule of fees to reimburse constables it must be referable to the schedule of fees provided for sheriffs under the provisions of sec. 2959.

As already appears, the civil court passed upon the reasonableness of this charge. This it presumably did pursuant to sec. 3779. At any rate, it is in accordance with the practice indicated in *First Nat. Bank v. Kickbusch,* 78 Wis. 218, 47 N. W. 267. The record as now before us plainly reveals the right of the sheriff *McManus* to recover the amount of his disbursements as so fixed by the civil court from the *Vogel Real Estate Company,* and the mandate of the court should direct that judgment be entered in his favor for the sum of $1,327.55 on his cross-complaint against the *Vogel Real Estate Company.*

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in favor of the plaintiff and against the defendant *McManus* in the sum of $1,327.55 and in favor of the defendant *McManus* against the *Vogel Real Estate Company* upon the cross-complaint of the said defendant *McManus* against said *Vogel Real Estate Company* for the sum of $1,327.55.