CROSSMAN (Raymond) and wife, Respondents, v. GIPP and another, Appellants.

CROSSMAN (Raymond), Respondent, v. SAME, Appellants.

CROSSMAN (Barbara), by Guardian *ad litem,* Respondent, v. SAME, Appellants.

CROSSMAN (Robert), by Guardian *ad litem,* Respondent, v. SAME, Appellants.

*May 1—June 5, 1962.*

For the appellants there were briefs by *Roberts, Board-man, Suhr, Bjork & Curry,* of Madison, and oral argument by *Walter M. Bjork.*

For the respondents there was a brief by *Clark Dempsey* and *Robert Robinson,* guardian *ad litem,* both of White-water, and oral argument by *Mr. Dempsey.*

Brown, C. J. The appeals present these issues:

(1) Was there any credible evidence to support the jury's finding that defendant-appellant Gipp was negligent as to management and control?

(2) Should the emergency doctrine be applied in this case?

(3) Was the trial judge correct in finding that the awards of $50,000 to respondent Barbara Crossman, $4,104.07 to respondent Raymond Crossman, and $2,700 to Raymond Crossman were excessive?

## Management and Control.

Defendants' appeal depends upon the validity of their assertion that the emergency doctrine absolves them of causal negligence. The doctrine, as stated in *Papacosta v. Papacosta* (1957), 2 Wis. (2d) 175, 85 N. W. (2d) 790 (cited by appellants), is that a person faced with an emergency which his conduct did not create or help to create, is not guilty of negligence in the methods he chose, or failed to choose, to avoid the threatened disaster. Appellants contend that they are such a person.

The trial court instructed the jury on the effect of the emergency rule in answering the questions pertaining to Gipp's management and control. Nevertheless the jury found him guilty of causal negligence in that respect, thereby finding that the emergency rule did not excuse him. Is there evidence, which the jury might believe, to support that conclusion? We consider that there is:

By his own testimony, Gipp saw Mrs. Crossman when he was 400 yards from the intersection. He was always aware of her presence thereafter. He saw her stop at the arterial stop sign for, he estimated, one second, and then she entered the arterial. At the moment he was 200 feet away from the crossing. Immediately he "stood on his brakes" and did no more. It must be conceded that at a

speed of 55 to 60 miles per hour he could not stop short of the intersection, but he did know that Mrs. Crossman was intending to enter Highway 26 and he saw her the instant she began to do so. Her actions informed him that she did not know of his approach. The jury was entitled to believe that nothing in the situation prevented him from timely blowing his horn to warn Mrs. Crossman that he was coming through and she should yield him the right-of-way. The emergency rule excuses a person entitled to the rule's protection who has chosen an alternative which may in retrospect appear not to have been the best way to avoid the collision. The emergency here was not such that Gipp could justifiably choose *between* attempting to stop *or* blowing his horn. The jury might reasonably conclude that the situation demanded that at least he blow his horn, and had time to do so, an action which would not interfere with his use of his brakes. The evidence permits the jury to conclude that his failure to warn was negligence in his management and control. *Mork v. Schmidt* (1959), 8 Wis. (2d) 241, 99 N. W. (2d) 102; *Erdmann v. Wolfe* (1960), 9 Wis. (2d) 307, 101 N. W. (2d) 44. His failure in this respect contributed to cause the accident or at least the jury might so have determined. We regard the question of management and control, including the applicability of the emergency rule, aided by the instructions of the trial court on the subject, as a question properly for the jury. We conclude that the jury's verdict of causal negligence on the part of appellants, and the judgment resting thereon must be affirmed.

### Damages.

Respondents submit that the trial court erred in reducing the jury awards in this case. The trial judge found the award of $50,000 to Barbara Crossman to be excessive and reduced it to $30,000. The judge also reduced awards

to Raymond Crossman for medical expenses incurred by him in the treatment of his children, Barbara and Robert. Several other reductions in damages were made but they are not involved on this appeal.

In reducing Barbara's award from $50,000 to $30,000 the trial judge gave respondents the option of accepting judgment for the reduced sum or of having a new trial on the issue of her damages. Respondent Barbara chose the reduced award. As we held in *Nygaard v. Wadhams Oil Co.* (1939), 231 Wis. 236, 284 N. W. 577, she is precluded from now contesting the reduction. In *Nygaard* an award was reduced from $2,000 to $750 and the court said (p. 242):

"However, there can be no recovery by the plaintiff of the amount by which the award was reduced. The plaintiff was given the option of taking judgment for the reduced amount or stand a new trial. Having exercised her option and taken judgment she is barred from further recovery. *Duss v. Friess,* 225 Wis. 406, 273 N. W. 547; *Krudwig v. Koepke,* 227 Wis. 1, 277 N. W. 670. A plaintiff desiring to contest a reduction of damages, when given an option to accept or stand a new trial, must reject the reduction and appeal from the order granting a new trial. *Jolitz v. Fintch,* 229 Wis. 256, 282 N. W. 87."

The learned trial judge determined that Barbara's damages probably included compensation for grief over the loss of her older sister, Mary, who died in the accident. He further reduced the awards to the father, respondent Raymond, for the medical and psychiatric bills because they included the treatment of Barbara's emotional disturbances. We are not prepared to overrule the conclusions of the trial court regarding either Barbara's damages or the award to her father for medical and psychiatric expenses.

Appellants submit that respondents may present their objections to the judgment only by motion for review, per

sec. 274.12, Stats., instead of by cross appeal, the method which respondents employed.

The purpose of sec. 274.12 (1), Stats., was to prevent successive appeals, thus requiring all appeals from the same judgment to be taken speedily.

"We therefore construe sec. 3049a [now sec. 274.12] as requiring any person appealing from a judgment to serve his notice of appeal upon all who are bound by the judgment, and those so served must perfect their appeal within thirty days or be deemed to have waived it. This is the only construction that can be placed upon the section that will accomplish the evident legislative purpose, or prevent the evil arising from successive appeals deplored in the *Gertz Case." American Wrecking Co. v. McManus* (1921), 174 Wis. 300, 316, 181 N. W. 235, 183 N. W. 250.

The record shows that notice of appeal by defendants was served on December 20, 1961. Respondents' notices of cross appeals were served on the same day. Surely, the purpose of sec. 274.12, Stats., has been met by the prompt cross appeals from the parts of the judgment to which respondents objected. It appears to us that it would be unduly technical and serving no useful purpose for us to hold that respondents' protest to the judgments reducing damages may not be considered because they appealed instead of moving to review. The cross appeals performed the function of the motions to review authorized by sec. 274.12, and we will treat such appeals as motions to review. We consider that sec. 274.12 did not preclude respondents' presentation of their issues by cross appeal within the time limited for motion to review by sec. 274.12.

*By the Court.*—Judgments affirmed.