STATE, Appellant, v. BEALS, Respondent.

*No. State 106. Argued September 14, 1971.—Decided November 5, 1971.*
(Also reported in 191 N. W. 2d 221.)

600

For the appellant the cause was argued by *Andrew L. Somers, Jr.,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *Gerald C. Nichol,* district attorney of Dane county.

For the respondent there was a brief by *Van Metre & Hanson* and *Jack W. Van Metre,* all of Madison, and oral argument by *Jack W. Van Metre.*

WILKIE, J. A threshold question which we must consider before reaching the issues on the merits as they are raised concerning both lineups is whether this court has jurisdiction to review both the order suppressing the third lineup, and the order denying the suppression of the second lineup. The state has appealed from that part of the circuit court's order which suppresses the third lineup, taking this appeal pursuant to sec. 974.05 (1) (d) 2, Stats. That section provides that the state may appeal from any order or judgment the substantive effect of

which results in the suppressing of evidence. There is no doubt, therefore, as to this court's jurisdiction to review that part of the order suppressing the third lineup.

Following the state's notice of appeal, defendant filed both a cross appeal and a notice of review, requesting this court to review that part of the December 10th order of the circuit court refusing to suppress the second lineup. The state argues that because appeal is a statutory right, this court should not review the second lineup.

Appeal is strictly a statutory right.[1] It is also true that there is no statutory provision for a criminal defendant to appeal prior to trial from an order denying suppression of a lineup. Thus had the attorney general not appealed in the present situation, the defendant could not have review of the order denying his motion until after an adverse final judgment. The statutes governing appeal do, however, provide for cross appeal and review by a respondent. Sec. 274.12 (1), Stats., provides:

"A respondent adverse to the appellant upon the latter's appeal may have a review of any rulings prejudicial to him by serving upon the appellant at any time before the case is set for hearing in the supreme court a notice stating in what respect he asks for a reversal or modification of the judgment or order or portion thereof appealed from."

Defendant here has served such a notice. As sec. 974.03 provides that criminal appeals by either party are to proceed in the same manner as civil appeals, sec. 274.12 applies to both civil and criminal cases.

The purpose of sec. 274.12, Stats., is to prevent successive appeals and to require all appeals from the same judgment or order to be taken speedily.[2] Consistent with that policy is the idea, expressed by this court in civil

---

[1] *State v. McNitt* (1943), 244 Wis. 1, 4, 11 N. W. 2d 671.

[2] *Crossman v. Gipp* (1962), 17 Wis. 2d 54, 61, 115 N. W. 2d 547; *Turk v. H. C. Prange Co.* (1963), 18 Wis. 2d 547, 563, 119 N. W. 2d 365; see also: 4 Am. Jur. 2d, *Appeal & Error*, p. 688, sec. 177.

appeals,[3] that it would be unfair to preclude a respondent from seeking review of an unfavorable aspect of the same judgment or order appealed from.

The present notice of review or cross appeal does raise a unique problem in that respondent's appeal could not be maintained independently of the state's appeal. This issue was faced squarely by an intermediate appellate court in Florida.[4] In that case the state appealed under a statute [5] quite similar to sec. 974.05, Stats. In that case the Florida court indicated:

"[T]he appellee in this case would not have the right to maintain a separate and distinct appeal from the order denying his motion to quash the information. This is for the reason that appeals from interlocutory orders entered in criminal cases may not be the subject of an interlocutory appeal unless specifically authorized by statute or rule of the Supreme Court. He does, however, have the right to maintain his cross-appeal in this case since it relates to the same order from which the State's appeal is taken." [6]

This rule was subsequently cited with approval by the Florida Supreme Court.[7]

In the present case separate rulings were made regarding both lineups. They were all contained in the same order of the circuit court. The proceedings in that court were totally interwoven. While sec. 274.12 (1), Stats., may not specifically cover an appeal to this court from the portion of an order not otherwise appealed from, all the rulings regarding the lineups were in the same order and the policy behind the cross-appeal statute and the equities of allowing the entire matter to be resolved at

---

[3] *Plesko v. Milwaukee* (1963), 19 Wis. 2d 210, 221, 120 N. W. 2d 130.

[4] *State v. McInnes* (Fla. App. 1961), 133 So. 2d 581.

[5] 24 Florida Stats. Annot. (1944), sec. 924.07.

[6] *State v. McInnes, supra,* footnote 4, at page 583.

[7] *State v. McKinney* (Fla. Sup. Ct. 1968), 212 So. 2d 761.

once, point towards our reviewing all rulings concerning both lineups.

### Defendant's right to adequate legal representation at the lineup.

As to the appeals taken on the order concerning the lineups, a single issue is dispositive and that is whether the defendant was adequately represented by legal counsel at the second and third lineups.

In *United States v. Wade* [8] and *Gilbert v. California* [9] the Supreme Court of the United States held that an accused is entitled, under the sixth and fourteenth amendments, to the assistance of counsel at postindictment lineups. This court in *Wright v. State* [10] held that in Wisconsin the *Wade-Gilbert* rules required the presence of counsel at lineups held after the warrant was issued and in *Hayes v. State* [11] this court further held that counsel was required at lineups held after the case had progressed from the investigatory to the accusatory stage in Wisconsin criminal procedure. Here it is stipulated by the state that the proceedings had entered the accusatory stage and that the defendant was entitled to the assistance of counsel at the lineups.

The presence of counsel, if necessary, is such presence of counsel at the actual confrontation between the individuals in the lineup and the witness or witnesses. This was made clear in *Stovall v. Denno*,[12] a companion case to *Wade* and *Gilbert*. In *Stovall* Mr. Justice Brennan, the author of all three opinions, summarized the effect of *Wade* and *Gilbert*:

[8] (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149.

[9] (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178.

[10] (1970), 46 Wis. 2d 75, 175 N. W. 2d 646.

[11] (1970), 46 Wis. 2d 93, 175 N. W. 2d 625.

[12] (1967), 388 U. S. 293, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199.

"*Wade* and *Gilbert* fashion exclusionary rules to deter law enforcement authorities from exhibiting an accused to witnesses before trial for identification purposes without notice to and in the absence of counsel. A conviction which rests on a mistaken identification is a gross miscarriage of justice. The *Wade* and *Gilbert* rules are aimed at minimizing that possibility by preventing the unfairness at pretrial *confrontation* that experience has proved can occur and assuring meaningful examination of the identification witness' testimony at trial." (Emphasis added.) [13]

Consistent with the interpretation that legal counsel is required at the time of actual confrontation is what we said in *Wright:* [14]

". . . The presence of an attorney *at the lineup,* whether or not such attorney eventually represents the defendant at the time of trial, is all that is required to aid in reconstructing the circumstances of the lineup at the time of trial. In fact, the limited purpose served by the presence of counsel *at the time of the lineup* has led to a holding that the fact that the attorney present at the lineup did not represent the defendant on the charge for which the lineup was conducted did not prejudice the defendant . . . ." (Emphasis added.)

Although Attorney Lazarra was neither retained by defendant nor appointed by a court to represent defendant, his presence at the police station was in accordance with a contract between Dane county and the legal services agency. In *Wright* this court said that the presence of any attorney at the lineup was all that was required, regardless of whether the attorney represented the suspect at trial or not.[15] The real question becomes whether the trial court was correct in concluding that the presence of counsel at the practice lineup carried forward and when considered together with the thoroughness of the questioning thereto provided the defendant with repre-

[13] *Id.* at page 297.
[14] *Wright v. State, supra,* footnote 10, at page 85.
[15] *Id.*

sentation by counsel on the second lineup. We think not. The fundamental purpose of having an attorney present at the lineup is to have him observe the conduct of the lineup and to reconstruct the circumstances of the lineup at a later pretrial motion on the use of lineup identifications or where such matter is considered at the time of trial. Such counsel was not present when either of the two lineups was conducted. The trial court held that the third lineup was barred because of the absence of an attorney for the defendant. This was equally true of the second lineup. The fact that Attorney Lazarra was present during the practice lineup and made some suggestions does not supply the necessary finding that he was, in effect, present at the second lineup. He was not present to observe and thus could not testify as to the detailed circumstances of that lineup. That was his function and the fact that neither Lazarra nor any other attorney was there on defendant's behalf invalidates both lineups. Although the requirement of counsel at lineups is relatively new and the function of counsel at such lineups has not been spelled out in great detail, the fundamental concept of a lawyer as an observer for the defendant was well established at the time of the two questioned lineups here. In the present case, after observing the practice lineup and not receiving a satisfactory response to his suggestions, counsel left the police station. The record gives no indication of his reasons or motives for this action. Clearly, it was improper conduct. If he left because he felt that the lineup which was about to be held would be unfair, he was assuming the unwarranted role of presuming to prejudge the fairness of the procedure. By leaving he deprived the defendant of an eyewitness to the actual circumstances of the lineup. We take strong exception to the statements by counsel at oral argument that he did not think that the attorney had any duty to stay once he had observed the practice lineup and had made his suggestions. We likewise take strong ex-

ception to counsel's statement at oral argument that he would have done the same thing if he had been in the shoes of Attorney Lazarra. We also think that the assistant district attorney who was present at the lineups, and who knew that Attorney Lazarra had departed, should have attempted to get another attorney to represent the defendant at the actual lineup.

Whether Attorney Lazarra's conduct constituted legal representation of the defendant at the lineups is a question of constitutional fact reviewable de novo by this court.[16] Even though counsel was able to observe the dress, appearance and number of the participants in the practice lineup, he was not able to witness the actual confrontation between the witnesses and the suspects. This is the occasion which is vital and must be conducted fairly. His absence meant that he could not be available later for court hearings either before or at the trial on the fairness of the lineups. There is no question but what his appearance at the practice lineup did not carry over so as to constitute representation at the second or third lineups.

A criminal defendant's right to legal assistance is one of the most basic and important rights which is accorded by our criminal justice system. The most obvious and important function of legal counsel is to assist the suspect in preparing a defense. The right to counsel is guaranteed by art. I, sec. 7, of the Wisconsin Constitution. This constitutional provision was effectuated by enabling legislation in the late 1850's,[17] and this court was among the first in the United States [18] to recognize the necessity of compensating attorneys who represented indigents in criminal proceedings in order to guarantee the defendant fully adequate representation.[19]

---

[16] *State v. Carter* (1966), 33 Wis. 2d 80, 89, 90, 146 N. W. 2d 466.

[17] Revised Stats. 1858, ch. 163, sec. 2.

[18] *See:* Annot. (1941), 130 A. L. R. 1439, 1450.

[19] *Carpenter v. Dane County* (1859), 9 Wis. 249 (*274).

The federal constitutional right to legal counsel [20] was not recognized by the United States Supreme Court until 1932. In that year in *Powell v. Alabama* [21] the court extended the right to court-appointed counsel to indigent defendants charged with capital offenses. After examining the historical and legal basis for such representation, the court concluded:

". . . Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect." [22]

Not until more than three decades after *Powell* was the right to counsel expanded and clarified. In *Gideon v. Wainwright* [23] the court held that the right to counsel is so important that the fourteenth amendment made the appointment of counsel publicly paid for alleged criminal indigents obligatory upon the states in all felony proceedings. On the same day the court required the states to appoint counsel to assist indigent criminal defendants in appealing their convictions.[24]

[20] The sixth amendment's guarantee of the right to legal counsel is made applicable to the states by the fourteenth amendment.

[21] (1932), 287 U. S. 45, 53 Sup. Ct. 55, 77 L. Ed. 158.

[22] *Id.* at page 69.

[23] (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799.

[24] *Douglas v. California* (1963), 372 U. S. 353, 83 Sup. Ct. 814, 9 L. Ed. 2d 811.

Finally, in *Gault* [25] the court extended the right to counsel to children alleged to be delinquent. This court, recognizing the importance of this right, held *Gault* retroactive.[26]

The principle that an attorney can be of great assistance to a criminal defendant in preparing a defense has been expanded to include the proposition that the attorney can assist his client by observing what occurs after the suspect has been taken into custody. In *Miranda* [27] the United States Supreme Court extended the right of representation of an attorney to in-custody interrogation, not only to provide the suspect with on-the-spot legal assistance, but also to provide the court with a trained observer of what occurred at the interrogation.

The role of counsel as an observer was again emphasized, as we have noted above, in the *Wade* [28] and *Gilbert* [29] lineup decisions. In *Wright*,[30] as we have also noted, this court emphasized the function of counsel as an observer.

The final duty of an attorney in criminal proceedings is to assist the law enforcement officers and to guard against practices which make these proceedings unfair. Attorney Lazarra, in leaving the station, deprived the defendant of a legal adviser and also deprived him and the general public of the benefit of having someone independent to observe the proceedings.

The attorney general argues that Attorney Lazarra's leaving the scene of the lineup was a deliberate strategy which constituted a waiver of defendant's right to counsel

[25] *In re Gault* (1967), 387 U. S. 1, 87 Sup. Ct. 1428, 18 L. Ed. 2d 527.

[26] *State ex rel. La Follette v. Circuit Court* (1967), 37 Wis. 2d 329, 155 N. W. 2d 141.

[27] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

[28] *Supra,* footnote 8.

[29] *Supra,* footnote 9.

[30] *Supra,* footnote 10, at page 84.

at the time of actual confrontation. Cases are cited by the state [31] in which there was a waiver by defendant's retained or appointed attorney as part of counsel's trial tactics. Two factors distinguish the present case from those cited. The first factor is the special relationship of Attorney Lazarra to the defendant. Although he was the attorney representing the defendant, he was not retained by the defendant nor appointed for him. He was there by the contract arrangement as defendant's substitute attorney for the purposes of the lineup. As the notion of an attorney's waiver of his client's rights is basically an aspect of the doctrine of agency,[32] it is doubtful that the relationship between defendant and Attorney Lazarra was sufficient to constitute an attorney-client relationship which allowed Lazarra to waive any of defendant's rights.

The second distinguishing aspect of the present case is that this asserted waiver on this record definitely was not part of a deliberate trial strategy. It must be considered a single act "on behalf" of defendant. Throughout the time of the two lineups viewed by witnesses, defendant requested to see counsel. Attorney Lazarra departed without consulting defendant about it and it is clear that the defendant did not desire him to go. On the question of waiver this court stated in *State v. McDonald* [33] that an attorney need not consult with his client prior to waiving some right. In *McDonald,* however, this statement was made in the context of a waiver made as part of an overall trial plan. Moreover, in the present case the defendant, as distinguished from the

[31] *Henry v. Mississippi* (1965), 379 U. S. 443, 85 Sup. Ct. 564, 13 L. Ed. 2d 408; *State v. Strickland* (1965), 27 Wis. 2d 623, 135 N. W. 2d 295; *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753; *State v. McDonald* (1971), 50 Wis. 2d 534, 184 N. W. 2d 886.

[32] Comment, *Criminal Waiver,* 54 Cal. L. Rev. (1966), 1262, 1277.

[33] *Supra,* footnote 31.

defendant in *McDonald,* vocally expressed his objection to Attorney Lazarra's actions.[34] The defendant here did not know of Attorney Lazarra's departure and repeatedly requested to see the attorney. In *Johnson v. Zerbst,*[35] the Supreme Court of the United States defined a waiver as "an intentional relinquishment or abandonment of a known right or privilege." In *Fay v. Noia*[36] the court reaffirmed the Johnson definition and emphasized that waiver "depends on the considered choice of the petitioner [defendant]." Thus in view of the relationship between counsel and defendant and defendant's repeated requests for counsel after Attorney Lazarra left, it must be concluded that there was no waiver.[37]

The attorney general argues that to hold there was no waiver "would leave law enforcement vulnerable to the whims of defense attorneys who would be able to thwart identification procedures by leaving." As noted above, Attorney Lazarra's conduct was improper—he should not have left. An attorney who wilfully attempts to impede justice by leaving a lineup violates his oath as an attorney. Such conduct subjects him to discipline as would any activity violating the attorney's oath.[38] On the facts of this case, however, there is no reason to impute counsel's poor judgment to the defendant.

Here then, because no legal counsel was present as required at the time of actual confrontation between wit-

[34] *Cf. Kennedy v. United States* (5th Cir. 1958), 259 Fed. 2d 883, 885; *Tompsett v. Ohio* (6th Cir. 1944), 146 Fed. 2d 95, 98, certiorari denied, 324 U. S. 869, 65 Sup. Ct. 916, 89 L. Ed. 1424.

[35] (1938), 304 U. S. 458, 464, 58 Sup. Ct. 1019, 82 L. Ed. 1461.

[36] (1963), 372 U. S. 391, 439, 83 Sup. Ct. 822, 9 L. Ed. 2d 837.

[37] *See generally, Attorney's Trial Waiver,* at 54 Cal. L. Rev. 1272; *see* footnote 32, *supra.*

[38] *Cf. Cincinnati Bar Asso. v. Leggett* (1964), 176 Ohio St. 281, 199 N. E. 2d 590; *In re Carroll* (10th Cir. 1969), 416 Fed. 2d 585, certiorari denied *sub nom. Carroll v. District Court* (1970), 396 U. S. 1011, 90 Sup. Ct. 570, 24 L. Ed. 2d 503; *In re Cooper* (1971), 95 Cal. Rptr. 646, 486 Pac. 2d 174.

nesses and suspects, the identifications made at both lineups should have been suppressed.

Because of our holding on the issue of the requirement of counsel at the second and third lineups we do not reach the issue of the unfairness of either of these lineups.

*The protective order.*

As to the appeal taken from the protective order, we conclude [39] that the order is not appealable and therefore this court does not have [40] to consider the merits of the appeal either as asserted by the state or on his cross appeal by the defendant.

The statute which permits appeal by the state provides:

"974.05 **State's appeal.** (1) A writ of error or appeal may be taken by the state from any:

"(a) Final order or judgment adverse to the state made before jeopardy has attached or after waiver thereof.

"(b) Order granting a new trial.

"(c) Judgment and sentence or order of probation not authorized by law.

"(d) Order or judgment the substantive effect of which results in:

"1. Quashing an arrest warrant;

"2. Suppressing evidence; or

"3. Suppressing a confession or admission.

"(e) Judgment adverse to the state, upon questions of law arising upon the trial, in the same manner and with the same effect as if taken by the defendant."

The order appealed from grants no new trial, concerns no probation, arrest warrant, or the suppression of evidence, of a confession, or of an admission. The order had the effect of allowing testimony into evidence which otherwise would have been privileged—the statute provides for no such pretrial appeal.

[39] *Estate of Hillery* (1970), 46 Wis. 2d 689, 694, 176 N. W. 2d 376, and cases cited at note 1.

[40] *Id.* at note 2.

Defendant also asserts in his brief that subsequent to the taking of this appeal Russell Buckner was tried and convicted of second-degree murder and armed robbery, and that for this reason the question of the propriety of the protective order is now moot. The state does not question this assertion. If Buckner had been convicted, then the protective order would no longer be necessary, and the matter would now be moot. In that the question is not of urgent public interest or great importance,[41] the appeal must be dismissed, not only because it is non-appealable, but also because it is moot.

*By the Court.*—That part of the order suppressing the third lineup is affirmed; that part of the order denying suppression of the second lineup is reversed. The appeal from the protective order is dismissed. The cause is remanded with directions to exclude all identifications made by witnesses who were at the second and third line-ups unless the in-court identifications are based upon observations of the suspect other than the lineup identifications.

ROBERT W. HANSEN, J. (*dissenting*). At about ten o'clock on an August evening, an armed robbery and killing took place in the city of Madison.

Later that evening, the Madison police placed in custody the defendant and two companions, suspected but not charged with having committed the robbery and homicide.

Also at the police headquarters were 18 persons who were witnesses to the holdup and homicide.

Around the midnight hour, the police set out to arrange a viewing of the suspects by the witnesses to determine

---

[41] *Cf. Income Tax Cases* (1912), 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, and cases cited therein; *see also: Schwarzbauer v. Menasha* (1966), 33 Wis. 2d 61, 146 N. W. 2d 402, and cases cited therein.

whether any of the witnesses identified any of the suspects as involved in the robbery and homicide.

Both the difficulty of reassembling the 18 eyewitnesses at a future date and the importance of freshness of recollection made an undelayed opportunity to identify reasonable.

The Dane county district attorney contacted Legal Services and that agency agreed to provide an attorney for the other two suspects at a lineup-type identification.

The attorney, provided by Legal Services under a contractual relationship with the county, arrived, spoke to the defendant and it was agreed between them that the attorney would represent the defendant until other arrangements for trial counsel were made.

The police arranged for three prisoners in the county jail, all of them black as were the three suspects, to appear in a lineup with the three men suspected of committing the crimes.

To enable the defendant's attorney and district attorney to preview the lineup, the police conducted a full dress rehearsal or "practice" lineup.

The defendant's attorney objected to the six persons wearing suit coats, stating that the borrowed suit coats worn by the nonsuspects were ill-fitting. The suit coats were removed from the six for the first lineup.

The defendant's attorney also objected to variances in height, weight and hair styles among the six persons in the lineup. He also objected to the ratio of suspects to nonsuspects—three each. There is no showing or claim that other nonsuspects of the race, height and weight demanded were available at the postmidnight hour.

With all of his demands not being met, the defendant's attorney stated that he thought he should leave and not further participate in the lineup.

The district attorney stated, "Phil, you have made your position clear. You have stated your position. Your objections have been noted. I want you to stay. . . ."

His demands for additional changes in the lineup arrangements not being acceded to, the defendant's attorney left.

At 1:20 a. m., the first lineup was conducted, exactly as it had been conducted at the rehearsal or "practice" run.

At the hearing on admissibility of the first lineup, the district attorney testified: "I think he left because he [defendant's attorney] thought he could invalidate the lineup if he did."

If defendant's attorney so thought then, he has no reason to change his mind now, for the majority opinion holds that the walkout by defendant's attorney prevented the holding of a constitutionally valid lineup identification.

The writer would hold that the deliberate defense stratagem or device of leaving the scene, after determining and observing the exact nature and composition of the lineup procedure to be followed, was an act or tactic binding upon his client, and constituted a waiver of counsel's right to remain.

The role of a defendant's counsel at a lineup identification is that of an observer.[1]

Here the defendant's attorney went beyond the role of observer to do three things: (1) To demand that changes be made in the composition of the lineup, one of which was made; (2) to threaten that, if the remaining de-

---

[1] See: Wright v. State (1970), 46 Wis. 2d 75, 84, 85, 175 N. W. 2d 646, stating: ". . . The presence of counsel at the lineup is intended to make possible the reconstruction at the time of trial of any unfairness that may have occurred at the time of the lineup. The important purpose to be served is that of observer. . . . His [counsel's] function, as observer, was to assist the court in reconstructing the circumstances of the lineup at the time of trial. That is what he did, and that is all that he was required to do. . . ."

mands were not acceded to, he would not remain as observer; (3) to, in fact, leave the scene when all of his demands were not met.

Whether "running out the bluff" or carrying out the threat is viewed as a tactic to secure further concessions or to prevent the holding of the lineup or to plant a time bomb to be exploded on appeal, the majority opinion makes clear that the defendant's attorney ought not to have done what he did.

Regardless of "oughtness," the writer would hold that, when the defendant's attorney did what he did, he, on behalf of his client, made ". . . a deliberate choice of strategy [which] even if it backfires, amounts to a waiver binding upon the defendant and this court. . . ." [2] Consultation of defense counsel with the defendant before embarking upon the stratagem or tactic is not a prerequisite to the strategic waiver rule. [3] The writer would hold that the calculated and carefully considered walkout of defendant's attorney constituted a

[2] *State v. McDonald* (1971), 50 Wis. 2d 534, 537, 538, 184 N. W. 2d 886, this court also stating: ". . . If this was a strategic trial tactic of defense counsel, it was a conscious and intentional waiver of the constitutional questions involved." Citing *Henry v. Mississippi* (1965), 379 U. S. 443, 85 Sup. Ct. 564, 13 L. Ed. 2d 408; *Fay v. Noia* (1963), 372 U. S. 391, 83 Sup. Ct. 822, 9 L. Ed. 2d 837.

[3] *Id.* at pages 538, 539, this court stating: ". . . Not every trial tactic can be or must be the result of consultation between counsel and client. . . . In the conduct of a criminal case, the trial court cannot satisfy both the client who proceeds pro se and counsel who disagrees. While the defendant should be consulted concerning pleas of guilty and the general defense of his case, he need not be consulted in every detail. The accused has no more right to control his attorney and the conduct of the trial than he has to dictate to his surgeon how to perform the operation." If this is the law as to midtrial strategies, it is more aptly applied to a prewarrant lineup ". . . when, as always would be the case, there was no judge or magistrate present to rule on the propriety of . . . objection. . . ." *Wright v. State, supra,* at page 84.

waiver, on behalf of his client, binding upon such client, of the right to the continued presence of the attorney at the identification lineup.

This is particularly true where the deliberate choice of strategy was made by defendant's attorney after he had observed and established, to his own satisfaction, the factual basis for future objection to the composition of the lineup. Since no objection is even suggested except as to the composition of the lineup, the defendant's attorney had already served as the "eyes" of the defendant [4] observing all that he needed or wanted to observe to establish the basis for future objection to the lineup as composed and conducted.

Actually, the majority opinion does not dispute or dissent from the general rule that a deliberate choice of strategy by defense counsel constitutes a waiver binding upon a defendant. Rather, it seeks to take the present situation out from under the general rule. Two reasons are advanced for not applying the rule in this case:

The first reason given for exceptionalizing this case is that the walkout of defendant's attorney was a "single act 'on behalf' of defendant," and "not part of a deliberate trial strategy." To qualify as a tactic, an act or choice of alternative strategies, the majority states, must be "made as part of an overall trial plan." Neither precedent nor sound reasoning support such added requirement. What makes an act or choice between alternative actions a "tactic" is its being made deliberately, after evaluation of the consequences of making the particular choice. Many of the major decisions in criminal

---

[4] *See: Zamora v. Guam* (9th Cir. 1968), 394 Fed. 2d 815, 816, the court stating: "We do not believe that Wade always requires the presence of a lawyer with certificate in hand in the given case. Underlying the Wade case is a philosophy that the lineup should not be exclusively a police function and that the defendant ought to have some protection at it and eyes there representing him. . . ." (quoted with approval in *Wright v. State, supra,* at page 85.)

cases, each a strategic choice between alternatives, are tubs that stand on their own bottoms. For example: Whether to waive preliminary hearing, whether to enter a plea of guilty, whether to have the defendant take the witness stand, whether to offer additional testimony or to cross-examine a particular witness. Each such choice between alternatives, with the gains and risks it involves, surely is a "tactic," to which the rule of strategic waiver applies. Even if a "tactic" required an "overall plan," both are clearly evident here. The tactic was to walk out; the plan was to challenge the admissibility of any identification made at the lineup. To what had been observed as to the composition of the lineup, the tactic served the planned objection by adding, successfully it would appear, the claim that the stroll taken by defense counsel rendered the lineup identification constitutionally infirm.

The second reason advanced for not applying the rule of strategic waiver to this case is the claim that there is here a "special relationship" between the defendant's attorney and defendant. The reference is to the fact that the attorney representing the defendant at the time of the identification lineup was provided by Legal Services under its contractual arrangement with Dane county so to do. The majority opinion states that it is "doubtful" whether the relationship between defendant's attorney and defendant "was sufficient to constitute an attorney-client relationship." The record provides no basis for any such doubt. The record establishes that, when the attorney arranged for by Legal Services arrived at police headquarters, he spoke with the defendant and the other two suspects and it was agreed between them that the attorney would represent the defendant and the two others until other arrangements for trial counsel were made. Ordinarily, retaining an attorney involves and implies an obligation to pay for services performed. But it is the authorization to appear for the client that estab-

lishes a full attorney-client relationship. That the bill is to be sent to someone else, here the taxpayers of Dane county, does not dilute the authority to represent nor change the attorney-client relationship into something less.

The writer would hold that, when the defendant here agreed to have the Legal Services' attorney represent him at the lineup, the attorney agreed to become his attorney and the relationship was that of attorney-client. If, as the majority opinion states, the attorney here was not "retained" by the defendant nor "appointed" by a court, a strange hybrid has been newly created. For the purpose of compliance with *Wade, Gilbert*[5] and other cases cited in the majority opinion, an attorney-client relationship is created enough to meet the constitutional requirement of being represented by counsel. But not enough of an attorney-client relationship is present to warrant applying the doctrine of strategic waiver to acts and tactics taken by provided counsel. It follows, inescapably from the majority opinion logic, that, if the defendant here had been financially able to retain private counsel and did so, deliberate choices between alternative strategies made by such "retained" counsel would be binding upon the defendant who hired him. This result goes well beyond equalizing the differences between those who are able to provide their own legal counsel and those for whom counsel must be provided at public expense. It gives only to the indigent, for whom counsel is provided, the option not to be bound by strategic decisions and trial tactics of his attorney. The goal of providing legal counsel for the indigent accused should be to place them in the same position as defendants able to hire their own attorneys. Certainly it should not be to

[5] *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178.

put them in a preferential position, with all of the pluses and none of the minuses.

Holding that the deliberate choice of tactics or strategy by defendant's attorney was binding upon the defendant and constituted here a waiver of the right to continued presence of such attorney at the first lineup, requires consideration of the objections raised by defendant to the fairness of such first lineup. The writer agrees with the trial court that the objections raised were without merit, and that such lineup was fairly conducted. On the claim that having three suspects and four nonsuspects in a lineup is an impermissible ratio, it is enough to note that in *Wright*,[6] a lineup composed of two suspects and two police officers was upheld as fairly conducted. Here the ratio is three suspects to four nonsuspects; there it was two-to-two. Actually, as to the defendant, the ratio is one-to-six for we are not entitled to lump the defendant and two other suspects into a single unit. That would be to assume an identification of any one of the three suspects as likely to be accompanied by an identification of the other two. To do so, would be to assume if not shared guilt, at least shared participation in a common criminal enterprise by the three.

The second and third objections to the composition of the first lineup deal, respectively, with variances in hair styles and disparities in height. Both relate to the matter of similarity in appearance, and both are answered by the holding in *Wright* that: ". . . The police are not required to conduct a search for identical twins in age, height, weight or facial features. . . ."[7] The test is the test of reasonableness or, as it was stated in *Wright:* "What is required is the attempt to conduct a fair lineup, taking all steps reasonable under the 'totality of circumstances'

---

[6] *Wright v. State, supra,* at pages 86, 87.

[7] *Id.* at page 86.

. . . ." [8] Given the broad variety of hair stylings in the nation, it would be entirely unreasonable to require the police to seek to locate lineup participants, acceptable in other particulars, whose hair styling matched that of a particular suspect. Even bringing a barber or hair stylist to the police headquarters would not insure such result. The writer would not want to suggest the providing of wigs to produce a sameness of hair styles among the persons appearing in a lineup, not even if there were a wig shop with a large variety of hairpieces available for borrowing. As to differences in height, six of the seven participants in the lineup, including the defendant, ranged in height from five feet, eight inches, to six feet or thereabouts. One participant, the seventh, was five feet, five and one-half inches tall. In *Wright,* the two suspects were five feet, eleven inches, and six feet, one inch, in height. The two nonsuspects, both police officers, were six feet and six feet, two inches in height. However, in *Wright,* the two suspects were nineteen and twenty years of age; the two nonsuspects were twenty-nine and thirty-six years of age. Under the "totality of circumstances" test, this court upheld the trial court finding in *Wright* that the lineup had been fairly conducted, and the writer would agree with the trial court here that it was fairly conducted in the case now before us.

Upholding the trial court finding that the first lineup was fairly conducted and holding that the walkout of defendant's attorney was a deliberate tactic or stratagem, binding upon the defendant, constituting a strategic waiver of the right to continued presence of such attorney at such lineup, the writer would affirm the trial court's admitting of identifications made at the first lineup as properly admissible. While the question is closer, giving full weight to the trial court finding of

[8] *Id.* at page 86.

fact that the second lineup, the one with suit coats on, did not meet the fairness test, the writer would affirm the trial court holding that identifications made at the second lineup were not admissible at trial. So holding and so upholding the trial court rulings, the writer would affirm.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.