JONES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 154. Argued May 2, 1973.—Decided June 5, 1973.*
(Also reported in 207 N. W. 2d 890.)

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. The defendant was convicted of armed robbery (masked).[1] The defendant pled guilty to this charge, conditioned upon his right to appeal[2]

[1] Contrary to secs. 943.32 (1) (b) and (2) and 946.62, Stats.
[2] Pursuant to sec. 971.31 (10), Stats.

from the trial court order denying defendant's motion to suppress the identification testimony of eyewitnesses to the crime. The pleadings here require us to inquire (1) whether the denial of the motion to suppress is reviewable; and, if it is, (2) whether the motion to suppress evidence was properly denied; and (3) whether the plea of guilty was acceptably accepted.

*Right to review.*

Writ of error. The writ of error, as issued by this court, was to review a judgment dated January 27, 1972. The only order entered on that date was the order denying defendant's motion to suppress evidence. The judgment in this case was dated March 16, 1972. There is no statutory provision for a criminal defendant to appeal prior to trial from an order denying suppression of identification testimony.[3] Review of the order denying his motion to suppress could not be had "until after an adverse final judgment." [4] Here the writ of error clearly was addressed to the judgment, and the error in the writ of error was as to the date of that judgment. As the state points out in its brief, the conditional plea of guilty was founded on sec. 971.31 (10), Stats., which by its terms refers only to a review upon appeal from a judgment of conviction.[5] However, the state in its brief "does not contend" that the court cannot or ought not, in this case and on this record, reach the merits of defendant's challenge to the order denying suppression of evidence. On the writ of error, directed to the judgment, we take up the suppression issue. The issue raised in

[3] *State v. Beals* (1971), 52 Wis. 2d 599, 605, 191 N. W. 2d 221.
[4] *Id.* at page 605.
[5] Sec. 971.31 (10), Stats., providing: "An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

regard to the acceptance of the guilty plea will likewise be considered on the writ of error directed to the judgment.

*Identifications by witnesses.*

Identifications challenged: The motion to suppress identification testimony challenged the admissibility of identifications of the defendant by eyewitnesses to the crime, all conducted prior to the commencement of criminal proceedings by issuance of information and warrant. Thus challenged are (1) a photo identification; (2) a voice recording identification; (3) an observation from another room; and (4) one-to-one confrontation. Not challenged or involved on this appeal is a staged lineup identification,[6] ordinarily the type of identification challenged on appellate review.[7] As to the four identification procedures here used, the defendant claims each to be "unnecessarily suggestive." That is the test,[8] to be applied in the light of the "totality of [the] surrounding circumstances,"[9] to balance the rights involved.[10] Ad-

[6] It appears that there was a police lineup, conducted by the police in an adjoining county, at which one eyewitness, James Gallo, identified a person other than the defendant as the armed robber. This lineup was not challenged by defendant's motion to suppress and is not involved on this appeal.

[7] *See: State v. Harper* (1973), 57 Wis. 2d 543, 205 N. W. 2d 1; *Jones v. State* (1970), 47 Wis. 2d 642, 178 N. W. 2d 42; *State v. Beals, supra; Wright v. State* (1970), 46 Wis. 2d 75, 175 N. W. 2d 646; *State v. Biastock* (1969), 42 Wis. 2d 525, 167 N. W. 2d 231; *Zdiarstek v. State* (1972), 53 Wis. 2d 420, 192 N. W. 2d 833.

[8] *Kirby v. Illinois* (1972), 406 U. S. 682, 691, 92 Sup. Ct. 1877, 32 L. Ed. 2d 411, stating: ". . . The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. . . ." (Citing *Stovall v. Denno* (1967), 388 U. S. 293, 302, 87 Sup. Ct. 1967, 18 L. Ed. 2d 1199; *Foster v. California* (1969), 394 U. S. 440, 442, 89 Sup. Ct. 1127, 22 L. Ed. 2d 402.)

[9] *Rozga v. State* (1973), 58 Wis. 434, 441, 206 N. W. 2d 606, also stating: ". . . As stated in *Foster, Stovall* and *Simmons,*

ditionally, the issue of the right of a suspect to have counsel present at the pretrial identifications is raised and will be considered as to each of the four identifications involved.

Photo identification. After viewing eight photographs, eyewitness James Gallo, son of the owner of the pharmacy that was robbed, identified a picture of the defendant "as a probable suspect in the robbery." No claim is here made that this photo identification was "unnecessarily suggestive," and, on this record, none could be made. Identification by photograph viewing is one of the alternative identification procedures available to police authorities. It certainly is not per se "unnecessarily suggestive." [11] Even a single photo showing would not be that. [12] Nor was the presence of counsel required at the time of such pretrial photographic identification. [13]

[*Simmons v. United States* (1968), 390 U. S. 377, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247] each case must be considered on its own facts and it is only a denial of due process of law when the conduct of the identification procedures are so impermissibly and unnecessarily suggestive and conducive as to give rise to a very substantial likelihood of irreparable misidentification. . . ."

[10] *Kirby v. Illinois, supra,* at page 691, stating: ". . . When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime."

[11] *Dozie v. State* (1970), 49 Wis. 2d 209, 213, 214, 181 N. W. 2d 369, stating: ". . . Such photo identification does not require a pictorial simulation of a police lineup. If the first picture exhibited had been identified by the witness as that of the holdup man, no others would be required to be exhibited. No element of per se suggestiveness is provided by the singleness of the showing. However, here the possibility of suggestiveness is clearly negatived by the selection of one needle from so large a haystack. . . ."

[12] *Kain v. State* (1970), 48 Wis. 2d 212, 218, 179 N. W. 2d 777, stating: "A polaroid picture of defendant was shown by the police to Mrs. Osheski and she identified it as a picture of the defendant. Postconviction counsel contends any such solo photo identification

Voice recording identification. In the presence of the eyewitnesses to the crime, James Gallo and Georgia Lindow, the police played a tape recording of defendant's voice. No claim is made that anything about the playing of the tape was "unnecessarily suggestive." It is not easy on this record to separate the voice identification from the direct observation of defendant by the witnesses which preceded the tape playing. We do so only to find the playing of a voice recording to be in the same category as a single photo identification. Hearing the voice recording gives an opportunity to identify the voice of a suspect. Viewing a photograph provides an opportunity to identify the facial features of a suspect. The single photo identification is not per se suggestive [14] and does

to be inadmissible, arguing on oral argument that at least five photographs of different persons should be exhibited, the witness to select one, if any, from the five as the crime committer. The one-from-five selection may well have greater impact upon judge or jury, but that goes to weight, not admissibility."

[13] *Kain v. State, supra,* at pages 218, 219, stating: "It is argued that *Wade-Gilbert* should be read to equate showing a photograph to a witness with a police lineup. . . . There is nothing in *Wade-Gilbert* to suggest that it is stretchable to such new outer limits. Actually, in *Wade* itself, the nation's high court listed 'the identification by picture of the defendant prior to the lineup,' as one of the factors that might establish that a witness' identification of defendant at trial was not the product of a lineup held without counsel being present." (Citing *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149; *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178.) *See also: Dozie v. State, supra,* at page 218, stating: ". . . The general and accepted rule is that the *Wade-Gilbert* requirement of presence or waiver of counsel does not and should not apply to photographic identifications or the exhibiting of photographs to a witness. . . ."

[14] *Kain v. State, supra,* at page 219, stating: "Nor do we find merit in postconviction counsel's claim that any single photo identification is by the fact that it was shown alone rendered fatally suggestive and inadmissible. A single photo identification is not to be presumed guilty until proved innocent. This rule is: '. . . each case must be considered on its own facts, and that convictions

not require the presence of counsel.[15] Neither does a voice recording identification, with the weight to be given either or both such types of identification being for the trier of fact.

Observation from another room. Both eyewitnesses, James Gallo and Georgia Lindow, were given the opportunity to observe the defendant from another room through a one-way mirror. Following the observation of defendant, witness Gallo stated, "To the best of my knowledge, that's the man I saw July 17." He testified that he was not sure whether anyone else was in the room. If no one else was in the room with the suspect, it would be what this court has termed a "one-to-one" observation.[16] If other persons came, went or stayed in an entirely unplanned situation, it would be what this court has termed a "one-out-of-the-crowd" situation,[17] analogous to a witness observing various persons appearing in courtroom proceedings.[18] The trial court found this observation from the next room "unnecessarily sug-

based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " (Quoting *Simmons v. United States,* supra, at page 384.)

[15] *Id.* at pages 218, 219, holding counsel not required to be present at single photo identification of defendant by witness, stating: ". . . Federal courts that have considered the issue are nearly unanimous in holding that *Wade-Gilbert* do not require presence of counsel at the time of an out-of-court photographic identification." (Citing *United States v. Ballard* (5th Cir. 1970), 423 Fed. 2d 127; *United States v. Bennett* (2d Cir. 1969), 409 Fed. 2d 888; *United States v. Robinson* (7th Cir. 1969), 406 Fed. 2d 64; and *McGee v. United States* (10th Cir. 1968), 402 Fed. 2d 434, certiorari denied (1969), 394 U. S. 908, 89 Sup. Ct. 1020, 22 L. Ed. 2d 220.)

[16] *Dozie v. State, supra,* at page 219.

[17] *Id.* at page 219.

[18] *Id.* at page 218.

gestive," but failed to state the basis or any reason for so holding. If the ruling were to have been material to the outcome of this appeal, remand would be indicated to determine why or in what particulars the observation was found to be suggestive. If that basis was something in the manner in which the observation was conducted, that would be a finding of fact to be sustained if supported by the evidence.[19] If the trial court was holding such observation, either one-to-one or one-out-of-a-crowd, to be per se suggestive, the ruling could not stand.[20] If the suggestion was that the police here were required to stage a lineup, that was clearly in error.[21]

Whether viewed as one-to-one or one-out-of-a-crowd identification, it is undisputed that the observation from the other room was conducted prior to the issuance of information or warrant, and prior to the institution of criminal proceedings. In *Hayes,* this court upheld a defendant's contention that he was entitled under *Wade-Gilbert* to the presence of counsel at a lineup, conducted prior to the issuance of a complaint and criminal war-

[19] *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725, this court stating: ". . . Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. . . ."

[20] *Dozie v. State, supra,* at page 215, this court stating: ". . . Identification by means of such prearranged police lineup is one, but only one, of the methods of identification that may be used by law enforcement authorities. Where the identifying is done by photograph, or by direct observation, of the suspect alone, or, as here, by picking the suspect out of a crowd, we deal with methods of identification that are not lineups at all under even the broadest definition of that word. . . . While direct observations or one-out-of-a-crowd identifications may not be impermissibly suggestive, they need not be made in situations simulating a prearranged police lineup. . . ."

[21] *Id.* at page 215, this court stating: ". . . If the suggestion is that the police must stage a lineup to have a proper identification of a suspect, there is no basis for any such suggestion. . . ."

rant.[22] However, the United States Supreme Court has since made clear that *Wade-Gilbert* apply only to lineups conducted "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."[23] The high court specifically negatived the suggestion that the requirement of counsel was constitutionally mandated "concerning an identification that took place long before the commencement of any prosecution whatever."[24] Moreover, *Hayes* referred only to a staged

[22] *Hayes v. State* (1970), 46 Wis. 2d 93, 97, 175 N. W. 2d 625, stating: "Hayes' first argument on appeal is that he was denied counsel at the lineup to which he was entitled under *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149, and *Gilbert v. California* (1967), 388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178. . . .

"In the instant case, although no complaint had been made and a warrant issued, we think the matter moved from a purely investigatory to an accusatorial stage. . . . Under these facts the police lineup constituted a critical stage and Hayes was entitled to counsel. . . ."

[23] *Kirby v. Illinois, supra,* the United States Supreme Court stating at pages 688, 689: ". . . a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. . . .

"This is not to say that a defendant in a criminal case has a constitutional right to counsel only at the trial itself. The *Powell* case makes clear that the right attaches at the time of arraignment, and the Court has recently held that it exists also at the time of a preliminary hearing. *Coleman v. Alabama, supra.* But the point is that . . . *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." (Citing *Powell v. Alabama* (1932), 287 U. S. 45, 53 Sup. Ct. 55, 77 L. Ed. 158; *Coleman v. Alabama* (1970), 399 U. S. 1, 90 Sup. Ct. 1999, 26 L. Ed. 2d 387.)

[24] *Id.* at pages 689, 690, the court stating: "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal

police lineup, and this court made clear that presence of counsel is not required at one-to-one or one-out-of-a-crowd observations held before commencement of criminal prosecution,[25] distinguishing between staged lineups and unstaged observations.[26] We do not have a lineup here,[27] and, as to opportunities to observe the defendant here involved, all prior to the issuance of information or warrant, the presence of counsel was not required. The contrary holding of the trial court was in error.

One-to-one confrontation. The fourth and final identification challenged is the typical one-to-one confrontation or direct identification. It involved only one of the two eyewitnesses, Georgia Lindow. Following her ob-

justice. . . . It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. . .

". . . We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever."

[25] *Dozie v. State, supra,* at pages 217–219, this court stating: ". . . unlike *Hayes,* this case does not involve a police-staged lineup. . . . In photographic identifications and in permitting a witness to observe a suspect on the street or in a crowded courtroom, the element of staging a situation is absent. There is neither police staging nor police control of what took place, only a police suggestion that the witness sit in a courtroom and observe what went on and who walked by. . . . Nor does it make sense that, in addition to being informed of the observation he [the defendant] has a right to have an attorney with him wherever he goes when observation is likely. . . ."

[26] *Id.* at page 219, this court stating: ". . . something of the very unplanned naturalness of the identification would be lost if the completely unstaged observation on a one-to-one or one-out-of-the-crowd basis required prior knowledge of the suspect, consent, or presence of counsel at the time of the observation. . . ."

[27] *Id.* at page 215, this court stating: ". . . The word lineup involves and requires a lining up of a number of individuals from which one of those lined up may or may not be identified as the committer of a crime. . . ."

serving the defendant through the one-way mirror,[28] she called the police station and asked if she could view the defendant again. She went back to the station and confronted the defendant in a one-to-one situation. The defendant, at the request of a police officer, repeated the words the robber used at the time of the holdup. However, in her presence, the police officer told the defendant that he had flunked a lie detector test. This remark by the police officer clearly suggested that the defendant was the man who had robbed the drugstore. It amply supports the trial court ruling, suppressing the identification made by the lady witness at this one-to-one confrontation. The situation parallels that in a recent case where a police officer told the witness that the suspect, whom she was to meet in a one-to-one confrontation, had said he had committed such a crime.[29] In both situations, the clear impression was that the defendant was the person who committed the crime. This made the identifications "unnecessarily suggestive." While the trial court erred in finding presence of counsel required at a one-to-one confrontation, conducted prior to the issuance of information or warrant, it did not err in holding this one-to-one identification "unnecessarily suggestive," and not admissible into evidence. It was both suggestive and inadmissible.

In-court identification. Suppressing evidence of a particular identification as having been secured in an "unnecessarily suggestive" manner raises the corollary question, under the twofold *Kirby* test, as to whether the excluded identification created a very substantial likelihood of irreparable misidentification. Or, as stated in *Rozga*, ". . . the question remains whether under 'the

---

[28] As to the positive identification of defendant by her at the observing through the one-way mirror, Georgia Lindow testified that, after she observed the defendant through the mirror, "I was almost positive. I didn't want to say positively."

[29] *Rozga v. State, supra.*

totality of the circumstances' this [improper confrontation] was sufficient enough to taint the in-court identification—thereby preventing it to independently stand. . . ." [30]

In the case before us, since the defendant pleaded guilty and no trial was required, the "in-court identification" of the two eyewitnesses refers to their testifying at the preliminary hearing and, more particularly, at the *Wade* hearing. Both witnesses, James Gallo and Georgia Lindow, made positive identifications of the defendant from the witness stand. Each had ample opportunity to observe the defendant, although he was masked, at the time of the holdup. Witness Gallo testified that, at the time of the holdup he observed the defendant from a distance of about one foot; that he, at that time, noticed his build, his size, his large and high cheekbones, and his facial features. The witness Lindow testified that she observed the defendant, at the time of the holdup, from a distance of less than 10 feet, that she noticed the defendant's high cheekbones, the bridge of his nose, and the tops of his eyes; that she heard his voice when he was inside the drugstore and threatened her with a gun; that his mask seemed to be falling because he kept pulling it up to keep it from sliding down off his nose.

Both witnesses, Gallo and Lindow, stated that their in-court identification of the defendant was based upon the observations made at the drugstore at the time of the holdup, and each denied that the in-court identification was based on any police station identification. The trial court set forth this testimony, both as to opportunities for observation at the time of the crime and the witness' emphatic denials that the in-court identifications were based or affected by police station identifications. The trial court concluded that the in-court identifications were independent of the identifications suppressed,

[30] *Rozga v. State, supra,* at page 443.

and so held. If the in-court identification can stand independently of an excluded or suppressed pretrial identification, the in-court testimony is admissible.[31] Credibility of witnesses is involved, and credibility is for the trier of fact to determine; also, in reviewing evidence to challenge a finding of fact, this court reviews evidence in the light most favorable to the finding.[32] Such findings will not be upset unless they are against the great weight and clear preponderance of the evidence.[33] Here the fact-findings of the trial court as to the in-court identifications being based on the scene-of-crime observations are well supported by the evidence.

### Plea of guilty.

Acceptance of plea. Defendant contends that his guilty plea is invalid because, at the time of taking the plea, the trial court did not specifically advise him that he was waiving his right against self-incrimination. The defendant does not claim that he was not aware either of

[31] *State v. Brown* (1971), 50 Wis. 2d 565, 571, 185 N. W. 2d 323, this court stating: "We think the record shows Mrs. Golimowski's in-court identification was based on her personal knowledge and observation gained at the time and place of the offense and was untainted by her identification at the police station as claimed by Brown. She had sufficient opportunity to observe Brown on the night of the robbery; . . . There was sufficient opportunity for her to get a good look at her assailants. . . . Her testimony passes the test . . . ."

[32] *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725, this court stating: ". . . The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. . . ."

[33] *State v. Herro* (1971), 53 Wis. 2d 211, 215, 191 N. W. 2d 889, this court stating: ". . . when the trial court makes findings of fact as to the credibility of witnesses and the weight of testimony, even in cases involving constitutional principles, this court will not upset those findings unless they are against the great weight and clear preponderance of the evidence, assuming the trial court adopted adequate procedures, as here, to try the issues."

his fifth amendment rights, or that they would be waived by pleading guilty. It is undisputed that the trial court, before accepting the plea, questioned the defendant as to his education and background, and explained the charges, maximum penalty, as well as determining that the plea was entirely voluntary. The trial court also explained to the defendant that, by entering a guilty plea, he was waiving his right to trial by jury, to confront witnesses, to having the state prove him guilty beyond reasonable doubt. The defendant was also advised of his right to appeal. While not specifically mentioning the fifth amendment, the trial court did ask the defendant: "Did you ever make a confession, signed confession, with respect to the charge made against you?" The record indicates that the defendant was earlier advised of his fifth amendment rights by the police, and the defendant signed a "Waiver of Constitutional Rights," that included the statement that he had been informed by the police of his right to remain silent and to refuse to answer questions or make a statement, and that any answers or statements that he made might be used in evidence against him. The defendant was represented by trial counsel at the time of entry of the guilty plea.

Defendant's counsel concedes that the record made is not subject to attack under the *Edwards Case*,[34] specifically holding that: "If a defendant knows the constitutional rights which are automatically waived by a plea of guilty, the plea cannot be invalidated on the ground that each of these constitutional rights were not specifically waived as such on the record. It is sufficient in such circumstances that the record shows he entered his plea voluntarily and knowingly." [35] However, de-

[34] *Edwards v. State* (1971), 51 Wis. 2d 231, 186 N. W. 2d 193.

[35] *Id.* at pages 235, 236, this court stating: "On the facts before us we do not find any reversible error. Edwards was no first offender or juvenile. He has a long criminal record. He does not claim ignorance of his constitutional rights waived by his plea of guilty or that he did not knowingly waive such rights by his

fendant's counsel urges that the *Edwards* test be abandoned in favor of requiring each right involved to be specifically waived in seriatim form on the record. The invitation to overturn the *Edwards* rule and result is declined. It is not the litany to be recited that is most important. It is rather that the record make clear that the plea of guilty was voluntarily and understandingly entered. It certainly was here.

*By the Court.*—Judgment and order affirmed.

plea. He claims only the record must show specific waiver of each constitutional right involved in the plea. The record as a whole shows Edwards understood what constitutional rights he waived by his plea and that is sufficient."